**UNITED STATES of America, Appellee,**

v.

**Clarence JONES, Defendant–Appellant.**

**No. 236, Docket 93–1256.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1993.

Decided Feb. 9, 1994.

488

Mark B. Gombiner, New York, NY (The Legal Aid Society, Federal Defender Services Unit, New York, NY, of counsel), for Defendant–Appellant.

Bridget M. Rohde, Ass't U.S. Attorney, Brooklyn, NY (Zachary W. Carter, U.S. Attorney, E.D.N.Y., Leslie R. Caldwell, Ass't U.S. Attorney, Brooklyn, NY, of counsel), for Appellee.

Before: CARDAMONE, McLAUGHLIN, and LAY,* Circuit Judges.

* Honorable Donald P. Lay, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

McLAUGHLIN, Circuit Judge:

Defendant Clarence Jones was convicted, following a jury trial, of bank robbery and armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) (1988); using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (1988 & Supp. IV 1992); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (1988). Jones was sentenced as a career offender to 300 months' imprisonment on his bank robbery, armed bank robbery and § 922(g)(1) convictions, to be followed by 60 months on his § 924(c) conviction and five years' supervised release. The judgment of conviction was entered in the United States District Court for the Eastern District of New York (Rosen, *J.*, sitting by designation).

On appeal, Jones challenges his conviction and sentence on several grounds. First, he contends that the evidence was insufficient to support his firearms convictions, as the government failed to prove both that the weapon used in the robbery was a firearm and that it traveled in interstate commerce. Second, Jones argues that he was denied a fair trial because the district court failed to sever or, at least, bifurcate the felon in possession of a firearm count. Third, he asserts that because one of his prior convictions was unconstitutional, he was improperly sentenced as a career offender. Finally, Jones claims that his sentence must be vacated because the district court failed to explain why it chose a specific sentence within the applicable Guidelines range.

For the reasons set forth below, we conclude that the government failed to prove the interstate commerce element of the felon in possession of a firearm count. We therefore vacate the conviction on this count, and instruct the district court to dismiss it. We also agree that, in light of the government's failure to prove the felon in possession count, it would be unfair to allow the bank robbery convictions to stand. We therefore reverse the convictions on the other three counts, and order a new trial. There is no need to reach the sentencing issue.

## BACKGROUND

On March 29, 1991, a man walked into the Hollis, Queens branch of the Reliance Savings Bank, displayed what looked like a handgun, and made off with $141. Five weeks later, Farmida Khan, a Reliance bank teller, spotted a man outside the bank who she believed was wearing the same clothes as the bank robber. She called the police and they arrested defendant Clarence Jones.

Jones went through two trials. He was initially tried for armed bank robbery, bank robbery involving an assault, and use of a firearm during a crime of violence. This trial resulted in a mistrial, with 10 jurors voting for acquittal. The government then filed a superseding indictment, repeating the same three counts and adding two new counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Count four charged that during the bank robbery, Jones, a convicted felon, possessed an "automatic pistol"; and count five alleged that when he was arrested, he possessed a "black gun."

Before the second trial, the defendant moved to sever counts four and five, arguing that if the two felon in possession counts were tried together with the bank robbery charges, the jury would learn that Jones was a convicted felon, precluding an impartial determination of the bank robbery counts. As an alternative to severance, counsel proposed a bifurcated trial.

The district court severed count five, but it denied the motion for severance or bifurcation of count four, finding that this felon in possession charge "arises out of the same operative set of facts as the first three [bank robbery] counts." To minimize potential prejudice, however, the district court forbade the government to elicit the underlying facts of the prior conviction; and the court also instructed the jury not to consider the prior felony conviction "for character or propensity."

At trial, the government's case consisted almost exclusively of eyewitness testimony from five bank employees. Although their descriptions of the man who robbed the bank varied, the employees were in essential

agreement as to the facts of the robbery itself. Moreover, three of the employees picked Jones's picture from a photographic array, and four made courtroom identifications of him as the bank robber. Finally, bank surveillance photographs showed that the robber wore clothes matching the eyewitness descriptions and those seized from Jones following his arrest. Although the gun used in the robbery was never recovered, three of the bank employees saw it at various times, and each described it as silver with a white handle.

At the close of the government's case, the defendant moved for a judgment of acquittal under Fed.R.Crim.P. 29, claiming that the government had failed to prove the interstate commerce element of count four, the felon in possession of a firearm charge. In response, the government pointed out that FBI Special Agent Thomas Moore had testified that no handguns "are manufactured" in New York state. Citing this testimony, the district court denied defendant's motion.

The trial judge's charge cautioned the jurors not to consider Jones's felony conviction for any purpose other than to determine whether the government had met its burden of proof on the felon in possession count. In the course of giving these limiting instructions, however, the judge repeated seven times that Jones had a prior felony conviction. The jury convicted Jones on counts 1–4.

The district court then sentenced Jones as a career offender, imposing a 300–month sentence on the bank robbery, armed bank robbery and felon in possession of a gun counts, to be followed by a mandatory consecutive 60–month term on count three (use of a firearm during a crime of violence).

### DISCUSSION

#### I. Legal Sufficiency

Jones contends that the evidence was not sufficient to sustain the convictions on count three (using a firearm during a crime of violence, in violation of § 924(c)(1)) and count four (possessing a firearm as a convicted felon, in violation of § 922(g)(1)). Specifically, he argues that the government failed to

prove, beyond a reasonable doubt, that (1) the weapon used in the bank robbery was a "firearm" within the meaning of 18 U.S.C. § 921(a)(3) (1988), and (2) the firearm was "in or affecting commerce." § 922(g)(1).

The standard applicable to sufficiency challenges has been oft repeated: viewing the evidence in the light most favorable to the government, the defendant must demonstrate that no "rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see United States v. Lindsay,* 985 F.2d 666, 672 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993). Measured against this standard, the evidence was sufficient to support the count three § 924(c)(1) conviction, but insufficient as to the count four § 922(g)(1) conviction.

#### 1. *"Firearm" Within the Meaning of § 921(a)(3)*

Both counts three and four required proof that the weapon Jones used in the bank robbery was a "firearm" within the meaning of § 921(a)(3) (defining a "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive"). Because none of the eyewitnesses knew anything about firearms, Jones contends that their descriptions were insufficient to establish that the weapon was a real gun, rather than a toy or other replica. We disagree.

Even though a gun is not recovered, eyewitness testimony may be sufficient for the government to meet its burden of proof under § 921(a)(3), so long as it provides a rational basis for the jury to find that the object observed by eyewitnesses "was, in fact, a firearm." *United States v. Castillo,* 924 F.2d 1227, 1230 (2d Cir.1991) (evidence sufficient to prove that unrecovered gun was "firearm" where witness was a police officer who had "extensive training and familiarity in the identification and use of firearms"). No specific type of testimony is required. *See Parker v. United States,* 801 F.2d 1382,

1384 (D.C.Cir.1986) (eyewitness testimony need not come from firearms expert to sustain § 924(c) charge), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 964, 93 L.Ed.2d 1011 (1987).

Admittedly, the eyewitnesses in the bank were not familiar with weapons. And they did not observe the gun at close range. Nevertheless, they agreed on its description and testified that they observed the robber push the gun into a bank employee's back and point it at another. Jones faults the government for not offering evidence that the gun was a working firearm rather than a toy gun or replica weapon. Nothing in the statute requires such negative evidence. The mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility. *Castillo,* 924 F.2d at 1230 & n. 6 (citing *United States v. Fiore,* 821 F.2d 127, 128 (2d Cir.1987)). That other bank robbers have used toy guns as weapons is no basis to overturn the convictions on counts three and four.

It was for the jury to weigh the evidence and determine whether the government met its burden of demonstrating that Jones possessed a "firearm." In returning verdicts on the firearm counts, the jury was free to credit the testimony of three eyewitnesses that Jones brandished a silver gun with a white handle. This testimony was sufficient to permit a reasonable jury to infer that the object displayed by Jones in the bank was in fact a "firearm." *See, e.g., United States v. Patino,* 962 F.2d 263, 265 (2d Cir.) (testimony of kidnapping victim that he could see the form of a gun through kidnapper's shirt sufficient to sustain § 924(c) conviction), *cert. denied,* —— U.S. ——, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992); *Parker,* 801 F.2d at 1383–85.

### 2. *Interstate Commerce Element in Count Four*

■ Count four required proof beyond a reasonable doubt that the unidentified and unrecovered gun traveled in interstate commerce. "[S]ome nexus with commerce must be shown, although that need not be 'any more than the minimal nexus that the firearm [has] been, at some time, in interstate commerce.' " *United States v. Travisano,* 724 F.2d 341, 347 (2d Cir.1983) (quoting *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977)). Testimony that a weapon was manufactured out of state is generally sufficient to meet the interstate commerce element. *See United States v. Lowe,* 860 F.2d 1370, 1374 (7th Cir.1988) ("It is firmly established that under § 922(g), proof of a gun's manufacture outside of the state in which it was allegedly possessed is sufficient to support the factual finding that the firearm was 'in or affecting commerce.' "), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

■ Here, the only evidence regarding interstate commerce was Agent Moore's testimony that handguns are not presently manufactured in New York state. The district court found this testimony sufficient to prove the interstate commerce element because of the "inference" that if guns are not now manufactured in New York, any gun now possessed in New York must have been manufactured outside New York. Jones points out that guns were at one time manufactured in New York state, and therefore the court's "inference" is a non sequitur. We agree.

There are at least two reported cases where the government established the interstate commerce element with proof that the handgun in question was made in New York state. *See United States v. Simmons,* 773 F.2d 1455, 1457 (4th Cir.1985); *United States v. Barfield,* 527 F.2d 858, 862 n. 6 (5th Cir. 1976). Therefore, Jones argues, because guns exist that were commercially manufactured in New York, the district court's inference is demonstrably irrational.

The government does not dispute that handguns were manufactured in New York and that in other jurisdictions federal firearms prosecutions have been successfully maintained on proof that the handgun was made in New York. The government is even willing to concede that there is a "slight possibility" that the firearm in this case was made in New York. Given these concessions, we do not find Agent Moore's testimony suf-

ficient to prove that the gun traveled in interstate commerce.

Because the only evidence that the gun traveled in interstate commerce is the arbitrary inference that any gun found in New York must have been made outside New York, we are forced to vacate the conviction on the § 922(g)(1) count and instruct the district court to dismiss that count of the indictment. *See, e.g., Travisano,* 724 F.2d at 347–48 (felon in possession conviction reversed where government conceded it could not establish that shotgun traveled in interstate commerce after its manufacture).

## II. Failure to Sever or Bifurcate the Felon in Possession Charge

Jones claims that the district court should have severed or bifurcated the felon in possession of a firearm count to avoid unfair prejudice. In the same vein, he contends that the court's charge on this point highlighted the fact of conviction, escalating the prejudice to Jones. Finally, Jones asserts that, because the evidence on the interstate commerce element was insufficient, his convictions on the first three counts are tainted by "retroactive misjoinder."

■ The denial of a severance motion is reviewed for abuse of discretion, "and will not be overturned unless the defendant demonstrates that the failure to sever caused him 'substantial prejudice' in the form of a 'miscarriage of justice.'" *United States v. Blakney,* 941 F.2d 114, 116 (2d Cir.1991) (citations omitted).

■ Jones contends that the "drastically differing results" at his first and second trials eliminate the need to speculate about the unfair prejudice stemming from proof of Jones's criminal past. Because of the inevitable spillover effect occasioned by proof of Jones's tawdry record, he argues that the district court should have severed or, at least, bifurcated the felon in possession count. We agree.

Courts have held that joinder of an ex-felon count with other charges requires either severance, bifurcation, or some other effective ameliorative procedure. *See, e.g., United States v. Joshua,* 976 F.2d 844 (3d

Cir.1992) (bifurcated trial is appropriate when government joins felon in possession count with other charges and proof of felony would not be admissible at trial on other counts); *United States v. Dockery,* 955 F.2d 50 (D.C.Cir.1992) (district court abused its discretion in failing to grant bifurcated trial or to fashion other procedures sufficient to curb prejudice from inclusion of ex-felon count); *United States v. Desantis,* 802 F.Supp. 794, 803 (E.D.N.Y.1992) (court ordered severance of ex-felon count because of manifest danger of prejudice).

Citing *United States v. Gilliam,* 994 F.2d 97 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993), the government argues that Jones was not prejudiced by the district court's refusal to sever or bifurcate the felon in possession count. Its reliance is misplaced. *Gilliam* is not dispositive here, as the § 922(g)(1) count in that case was the sole charge against the defendant, *see id.* at 98; prejudice as to other counts of the indictment was not—and could not have been—an issue.

The government's indictment tactics belie its present claim that the felon in possession count was not unfairly prejudicial. It added the felon in possession charge only after the first trial on the bank robbery charges ended with a hung jury, split ten to two for acquittal. No new facts supported the belated addition of the charge, and even if the government got a conviction on the new charge, it could not secure a longer sentence because of the grouping rules under the Sentencing Guidelines. *See* U.S.S.G. § 3D1.2(b) (1993). The ineluctable conclusion is that the government added the count solely to buttress its case on the other counts. *See United States v. Daniels,* 770 F.2d 1111, 1118 (D.C.Cir. 1985) (in dicta, criticizing government for including felon in possession count when "all the government obtained by adding the possession count was the ability to tell the jury that Daniels had previously been convicted of a felony").

Sensitive to this unfair spillover effect, the trial judge sought to impose a measure of damage control by cautioning the jury not to use evidence of Jones's felony conviction in deciding the other counts. In the course of

giving this limiting instruction, the judge reminded the jurors repeatedly that Jones was a convicted felon as he simultaneously asked them to put this consideration out of their minds when deciding if the bank employees had identified the right man.

Of course, jurors are presumed to follow instructions from the court. *See Gilliam,* 994 F.2d at 100. But it would be quixotic to expect the jurors to perform such mental acrobatics called for by the district judge. *See Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.) (Hand, J.), *cert. denied,* 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932). "To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities." *Daniels,* 770 F.2d at 1118.

The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense. *Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). Jones suffered prejudice from the admission of his criminal record. There is an overwhelming probability that the jurors did not adhere to the court's instructions.

■ Even if we were to agree that the district judge's initial denial of the motion to sever or bifurcate count four was proper, the government's failure to establish the interstate commerce element of that count creates, in our judgment, a "retroactive misjoinder" situation. The jury learned that Jones had a prior felony conviction as part of the government's proof on count four. Having vacated the latter count, we must remand for a new trial on the robbery, armed robbery, and § 924(c) counts because, in retrospect, the jury should never have heard evidence on the vacated count.

■ "Retroactive misjoinder" arises where joinder of multiple counts was proper initially, but later developments—such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions—render the initial joinder improper. *See generally,* 8 James Wm. Moore, *Moore's Federal Practice,* ¶ 8.06[3] (2d ed. 1993). In this Circuit, "[t]o invoke retroactive misjoinder," a defendant "must show compelling prejudice." *United States v. Novod,* 927 F.2d 726, 728 (2d Cir.) (citations and internal quotation marks omitted), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *see United States v. Warner,* 690 F.2d 545, 553–54 (6th Cir.1982). Prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal may constitute compelling prejudice. *See Novod,* 927 F.2d at 728.

Here, it would be unfair to allow the bank robbery convictions to stand even though the government failed to prove the felon in possession count. Comparing the result of the first trial with that of the second, there is an irresistible inference that Jones suffered compelling prejudice because of the improper submission of the unsupported felon in possession count. In short, the evidence that Jones is a felon was of the inflammatory sort that may have swayed the jury to convict him of the other charges even if the evidence had not supported those charges. Accordingly, we must also reverse the convictions on counts one, two, and three.

## CONCLUSION

To sum up: We vacate the conviction on the felon in possession count and instruct the district court to dismiss that count of the indictment. We reverse the convictions on the robbery, armed robbery, and § 924(c) counts; and remand for a new trial. Because we order a new trial on counts 1–3, we do not reach the sentencing challenge.