**UNITED STATES of America, Appellee,**

v.

**Anthony BREWER, Defendant–Appellant.**

**No. 1649, Docket 93–1861.**

United States Court of Appeals,
Second Circuit.

Argued June 20, 1994.

Decided Sept. 28, 1994.

Henriette D. Hoffman, New York City (The Legal Aid Soc., Federal Defender Div., Appeals Bureau, New York City, of counsel), for defendant-appellant.

Mark W. Lerner, Asst. U.S. Atty. (Zachary W. Carter, U.S. Atty., Peter A. Norling, Julie E. Katzman, Asst. U.S. Attys., E.D.N.Y., Brooklyn, NY, of counsel), for appellee.

Before: WINTER, MINER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Anthony Brewer appeals from a judgment entered December 16, 1993 in the United States District Court for the Eastern District of New York, Carol Bagley Amon, *Judge*, that, following a jury trial, convicted Brewer of: conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 and armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (collectively the "Bank Robbery Counts"); and the use of a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(1) (the "Firearm Count"). The court sentenced Brewer principally to concurrent terms of sixty and eighty months imprisonment on the Bank Robbery Counts, to be followed by a mandatory consecutive sixty month term of imprisonment on the Firearm Count, further directing that the overall sentence run concurrently with a state sentence that Brewer was then serving.

Brewer was convicted for robbing a branch of Chemical Bank located at 1500 Forest Avenue, Staten Island, New York (the "Bank"), on January 30, 1992. The primary evidence against Brewer consisted of eyewitness identification testimony and evidence recovered from a gray 1987 Chevrolet Celebrity bearing New York license plate "G2J 801" (the "Car"). On this appeal, Brewer contends that: (1) the identification testimony and the evidence from the Car was legally insufficient to establish his participation in the bank robbery; (2) the evidence supporting the Firearm Count was legally insufficient because no firearm was recovered and none of the eyewitnesses was adequately familiar with firearms to tell whether the gun used during the robbery was a firearm within the statutory definition; and (3) the district court erred in refusing to allow Brewer to elicit testimony from a government witness concerning five witnesses to the bank robbery who did not select Brewer's photograph from photo arrays that were presented to them.

We reject Brewer's arguments, and affirm the judgment of conviction.

## Background

On January 30, 1992, three men robbed the Bank during the middle of the day and made off with approximately $95,000. During the robbery, one of the malefactors stood by the front door of the Bank displaying a large gun. Acting on information provided by Joseph Calvanese, a bank customer waiting at the bank's drive-through window dur-

ing the robbery who followed the robbers as they fled in the Car and then abandoned it for another vehicle, Special Agent Edward M. McCabe of the Federal Bureau of Investigation found and searched the Car.

The search recovered numerous rounds of live ammunition, an empty ammunition box, an owner's manual for an AP–9 firearm, a hand-held radio, a police scanner, an economics textbook, a piece of cardboard, two pull-over ski masks, and a copy of a book, the *Holy Koran.* An envelope was inserted between the book's pages, addressed to Anthony J. Brewer and containing a letter, a card, and a photograph, all signed by "Sherry Ann." Brewer's fingerprints were found on the *Holy Koran,* the envelope and the photograph inside it, the economics textbook, and the piece of cardboard. The car was registered to an individual named Abdul Mohammed, 190 Wilson Avenue, Brooklyn, New York, whose date of birth was listed as November 3, 1967. It was stipulated that Brewer's birth date was November 3, 1967, and that he had stated on a previous occasion that he resided at the Wilson Avenue address.

This evidence focused suspicion on Brewer, and led McCabe to include Brewer's photograph in one of four six-photograph arrays shown to several witnesses to the Bank robbery. On February 14, 1992, McCabe interviewed the various witnesses and had each of them view the arrays. Each array contained a photograph of a man whom McCabe suspected of participating in the Bank Robbery, and individual photographs of five other men of like appearance. One of these arrays included Brewer's photograph. Three Bank employees who had been present during the robbery, Kathleen Cassiliano, Marta Marrano, and Agnes Charzewski (collectively the "Identifying Witnesses"), selected the photograph of Brewer as "resembling" the robber who had been stationed at the front door of the Bank, holding the large gun. Five other eyewitnesses viewed the photo arrays and did not select Brewer's photograph (the "Nonidentifying Witnesses").

Brewer was indicted and charged with the three counts that led to his conviction and this appeal.[1] On September 15, 1993, the Identifying Witnesses viewed a lineup of Brewer and five other men of the same general physical appearance, conducted at Brewer's request, but none of them identified anyone in the lineup as being one of the bank robbers.

At trial, the government's case consisted primarily of the statements made by the Identifying Witnesses when viewing the photo arrays and the evidence recovered from the Car. The government placed in evidence a photograph of Brewer taken on February 17, 1992, contending that it would enable the jury to perceive a change in his appearance from February 14, 1992, when the photo arrays were shown to the Identifying Witnesses, to the time of the lineup, when they failed to identify him. At the close of the government's case, Brewer moved for a directed verdict of acquittal pursuant to Fed. R.Crim.P. 29, which the court denied. After a brief case by the defense relating peripherally to the issue of identification, the jury returned a verdict of guilty on the Bank Robbery Counts and the Firearm Count. Brewer renewed his Rule 29 motion, which the court again denied, and sentence was imposed as previously indicated.

This appeal followed.

### Discussion

At the outset, we note the " 'very heavy burden' " placed upon a defendant challenging the sufficiency of the evidence underlying a conviction. *See United States v. Rosenthal,* 9 F.3d 1016, 1024 (2d Cir.1993) (quoting *United States v. Ragosta,* 970 F.2d 1085, 1089 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 608, 121 L.Ed.2d 543 (1992)). To succeed, Brewer must demonstrate that, "viewing the evidence in the light most favorable to the government, . . . no 'rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.' " *United States v. Jones,* 16 F.3d 487, 490 (2d Cir.1994) (quoting *Jackson*

---

1.  Brewer was also charged with possessing a firearm and ammunition in interstate commerce after a felony conviction in violation of 18 U.S.C. § 922(g)(1). This count was severed prior to trial, and dismissed on motion of the government at sentencing.

*v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *see also United States v. Gordon,* 987 F.2d 902, 906 (2d Cir. 1993) ("we must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt") (collecting cases). We first address Brewer's claims of insufficiency against these standards, and then consider his claim of evidentiary error.

## A. *The Sufficiency of the Evidence on the Bank Robbery Counts.*

The evidence against Brewer consisted primarily of evidence recovered from the Car and statements made by the Identifying Witnesses while viewing the photo arrays. The statements of the Identifying Witnesses were admitted both through their own testimony, and through the testimony of McCabe, pursuant to Fed.R.Evid. 801(d)(1)(C).[2] *See United States v. Marchand,* 564 F.2d 983, 996 (2d Cir.1977) (" 'Rule 801(d)(1)(C) should . . . be interpreted as allowing evidence of prior identification by the witness of a photograph of the person whom he had initially perceived.' ") (quoting 4 Weinstein & Berger, Commentary on Rules of Evidence for the United States Courts and Magistrates 801–107 to 108 (1976) (alteration in *Marchand* )), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978).

Brewer contends that this evidence is insufficient to prove his participation in the Bank Robbery because: (1) the statements of the Identifying Witnesses were not actual identifications since, even if credited, they established only that Brewer "resembled" one of the bank robbers; and (2) the evidence recovered from the Car connected Brewer to the Car, but not to the Car on the date of the robbery.

Eight witnesses to the Bank Robbery viewed a series of four photo arrays two weeks after the robbery. After being asked if they recognized any of the bank robbers in the array containing photographs of Brewer and five other men, five of the witnesses did not select any photograph from that particular array, although one of the five selected another person, Kenneth Williams, from an array that did not include a photograph of Brewer. The Identifying Witnesses selected Brewer's photograph, and no other. After selecting Brewer's photograph, each of the Identifying Witnesses wrote a statement on the back of the photograph[3] of Brewer that they had just selected from the array. Cassiliano wrote: "May resemble man at door with machine gun." Charzewski wrote: "It resembles man at front door with machine gun, black cap, black coat." Marrano wrote: "This may be the man that was in the bank on 1/29/92 that inquired about a business account and the one on 1/30/92, the day of the robbery with the big gun."

■■■ Brewer argues primarily that the witnesses' statements tended to show only that he "resembled" or "looked like" one of the bank robbers, and were accordingly insufficient to sustain his conviction on the Bank Robbery Counts. The settled law, however, is that the certainty of a witness' identification is only a factor in determining its reliability. *See Manson v. Brathwaite,* 432 U.S. 98, 114–16, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (listing as factors opportunity to view, degree of attention, accuracy of description, level of certainty, and the time between the crime and the confrontation). Most of these factors argue in favor of the reliability of the statements by the Identifying Witnesses. Further, in the absence of " 'a very substantial likelihood of irreparable misidentification[,]' . . . [identification] evidence is for the jury to weigh." *Id.* at 116, 97 S.Ct. at 2253 (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) (alteration added)); *see also Marchand,* 564 F.2d at 996 ("Protection against identifications of questionable certainty is afforded by the requirement that the declarant be available for cross-examina-

---

**2.** Rule 801(d)(1)(C) provides that: "A statement is not hearsay if— . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person."

**3.** The photo arrays shown to the various witnesses each contained duplicate copies of the same photographs. Accordingly, when the Identifying Witnesses wrote their statements on the back of the photograph of Brewer, they were each writing on different copies of the same photograph.

tion; questions of the probative value of the testimony are thus for the jury.") (citations omitted).

Furthermore, we are not required to pass upon the sufficiency of identification evidence standing alone, because the Identifying Witnesses' identification of Brewer as one of the bank robbers was significantly corroborated by evidence recovered from the Car. *See Marchand,* 564 F.2d at 1000–01 (evidence sufficient to support conviction even though identifying witness was asked to select photograph that "most closely resembled" defendant, because of corroborating evidence). Although conceding at oral argument that the evidence recovered from the Car has some corroborative value, Brewer contends that this evidence does not establish his presence in the Car on the day of the bank robbery.

■ Calvanese's essentially unchallenged testimony established that the Car was used for the escape from the bank robbery. The Car was linked to Brewer by his fingerprints, which were found on items in both the trunk and the interior of the car, an envelope addressed to "Anthony J. Brewer," and the Car's registration to a person with Brewer's date of birth at an address that Brewer had acknowledged as his residence. Concededly, this evidence, standing alone, does not establish that Brewer was in the bank on the occasion of the robbery, but it certainly reinforces the identifications that placed him there.

■ Brewer also asserts that his conviction is undermined by: (1) the inherent unreliability of eyewitness testimony in general and photo arrays in particular; (2) the ratio of witnesses who did not select Brewer's photograph from the array to those who did (5:3); and (3) the inability of the Identifying Witnesses to identify Brewer at a lineup nineteen months after the robbery. Although these arguments might be viewed by a trier as weakening the identification evidence, they do not as a matter of law undermine the sufficiency of the evidence supporting Brewer's conviction. *See Foster v. California,* 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 1128 n. 2, 22 L.Ed.2d 402 (1969) ("The reliability of properly admitted eyewitness identi-

fication ... is a matter for the jury."); *United States v. Matthews,* 20 F.3d 538, 547 (2d Cir.1994) (same) (citing *Foster,* 394 U.S. at 442 n. 2, 89 S.Ct. at 1128 n. 2); *Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986) (same) (collecting cases, including *Foster*); *Marchand,* 564 F.2d at 996 (same).

In sum, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in its favor, and in the absence of any claim that the procedures which elicited the statements by the Identifying Witnesses were suggestive or improper, we conclude that the evidence at trial sufficed to sustain Brewer's conviction on the Bank Robbery Counts.

**B.** *The Sufficiency of the Evidence on the Firearm Count.*

Brewer contends that even if the evidence was legally sufficient to sustain the Bank Robbery Counts, it is insufficient to support his conviction on the Firearm Count. Brewer was charged in this count with using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). It is undisputed that the underlying Bank Robbery constitutes a crime of violence within the meaning of this statute. *See United States v. Bernier,* 954 F.2d 818, 819 (2d Cir.1992) (per curiam) (affirming § 924(c) conviction for using a gun during bank robbery), *cert. denied,* — U.S. —, 113 S.Ct. 2417, 124 L.Ed.2d 640 (1993); *United States v. McCormack,* 829 F.2d 322, 323 (2d Cir.1987) (same).

For purposes of § 924(c), a firearm is defined, *inter alia,* as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). Accordingly, a fake or toy gun does not come within this definition. Although three witnesses identified Brewer as being the bank robber in possession of a weapon described alternatively as the "machine gun" or the "big gun," Brewer contends that this evidence is legally insufficient because none of the witnesses describing the weapon had sufficient familiarity with guns

to tell whether the weapon viewed was in fact a firearm within the definition of § 921(a)(3).

Brewer's argument is foreclosed by our recent decision in *Jones,* 16 F.3d at 490–91. In that case, we rejected the defendant-appellant's contention that "[b]ecause none of the eyewitnesses knew anything about firearms, ... their descriptions were insufficient to establish that the weapon was a real gun rather than a toy or other replica." *Id.* at 490. We concluded that testimony by lay witnesses agreeing on the description of the firearm was sufficient, and that it was for the jury to determine whether the government had met its burden of proof. *Id.* at 490–91.

In *Jones,* three witnesses described the gun only as "silver ... with a white handle." *Id.* at 491. In the instant case, both Cassiliano and Charzewski identified Brewer as the man at the front door with the "machine gun," and Marrano identified Brewer as the man "with the big gun." Charzewski described the gun as "look[ing] like a machine gun, but a shorter version." Further, in addition to the consistent testimony of three witnesses describing the gun, corroborating evidence was present here that was not present in *Jones*—the live ammunition recovered from the Car. Once the jury concluded that Brewer participated in the robbery, the evidence of this ammunition certainly supported the jury's conclusion that the gun described by the witnesses was a firearm within the meaning of § 921(a)(3)(A).

Based upon both the consistent testimony of the Identifying Witnesses and the live ammunition recovered from the Car, we conclude that a rational jury could have found beyond a reasonable doubt that the "gun" described by the witnesses was a firearm within the meaning of §§ 921(a)(3)(A) and 924(c)(1).

## C. *The Exclusion of Evidence that Five Witnesses Failed to Select Brewer's Photograph.*

Brewer argues on appeal that he was improperly denied the opportunity to cross-examine McCabe concerning the failure of five eyewitnesses to the bank robbery to identify Brewer when shown the photo arrays.[4] Brewer relies upon Fed.R.Evid. 803(1), the present sense impression exception to the hearsay rule,[5] in support of his argument that he could elicit this testimony through McCabe, rather than through the witnesses themselves. The district court believed the situation to be controlled by Rule 801(d)(1)(C), *see supra* note 2, and ruled that Brewer could only elicit this testimony by calling the witnesses themselves, which Brewer declined to do.

Under Rule 801(d)(1)(C), a statement of prior identification may be received in evidence only if "the declarant testifies at ... trial ... and is subject to cross-examination" concerning the prior identification. *See supra* note 2. Although the rule is not precisely directed to testimony concerning a prior *failure* to identify, we believe that the purpose and policy of the rule fairly encompasses such situations, as well. Whether or not a prior out-of-court identification is successful, the reliability of, and weight to be accorded to, the evidence can best be assessed by having the declarant available for cross-examination.

Brewer contends, however, that the nonidentifications should have been admitted as a present sense impression through cross-examination of McCabe pursuant to Rule 803(1). Statements may be admitted pursuant to Rule 803(1) without examination of the declarant, "even though the declarant is available as a witness." *See supra* note 5.

Brewer's own description of Rule 803(1) shows why his contention must fail. Quoting

---

4. It is not at all clear from the colloquy regarding this issue at trial that Brewer sought cross-examination regarding the failure by all five witnesses to identify Brewer, but this datum does not affect the legal analysis of this issue.

5. Rule 803(1) provides that a "present sense impression" is "not excluded by the hearsay rule,

even though the declarant is available as a witness." A "present sense impression" is defined as: "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Id.*

4 Louisell, *Federal Evidence* § 438 (1980), Brewer describes the rationale of Rule 803(1) as follows: "Statements of present sense impression are considered reliable because the immediacy eliminates the concern for lack of memory and precludes time for intentional deception." The essence of an identification such as at a photo array or a lineup, however, is a comparison between what the witness is contemporaneously viewing and the witness' recollection of a prior event, in this case the bank robbery. As the district court aptly noted: "The heart of a photographic identification [is that] you are asking someone about their perception of a past event.... [Y]ou are asking them to recall[,] by definition[,] what happened in the past." Brewer's characterization of observations made during the viewing of a photo array as "highly trustworthy because they were made simultaneously with the event being perceived, namely, the photo array", ignores the vital element of memory.

The two cases relied on by Brewer to support his contention that the nonidentifications come within Rule 803(1) are inapposite. In *United States v. Hinton,* 719 F.2d 711 (4th Cir.1983), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984), the court concluded that a police officer's "contemporaneous response" to a defendant's offer to "cop" to a particular charge came within Rule 803(1), and alternatively, that any error in admitting this statement was harmless. *Id.* at 712–13. In *MCA, Inc. v. Wilson,* 425 F.Supp. 443, 450–51 (S.D.N.Y.1976), *modified,* 677 F.2d 180 (2d Cir.1981), a copyright infringement case in which the issue was "whether the allegedly infringing work is recognizable by ordinary observation as having been pirated from the copyrighted source," *id.* at 450, the court concluded that out-of-court declarants' immediate reactions to a musical work were admissible pursuant to Rule 803(1). The statements admitted in both cases were obviously contemporaneous with the events to which they related.

In this case, by contrast, the Nonidentifying Witnesses' memory was at issue, and that is precisely why the statements of nonidentification do not come within Rule 803(1). *See United States v. Parker,* 936 F.2d 950, 954 (7th Cir.1991) (" 'The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recognition or conscious fabrication.' ") (quoting *United States v. Blakey,* 607 F.2d 779, 785 (7th Cir.1979)); *see also In re Japanese Elec. Prods. Antitrust Litig.,* 723 F.2d 238, 303 (3d Cir.1983) (exception for present sense impressions founded on notion that contemporaneity of observation and impression protect against defective memory), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Accordingly, once Brewer had made it clear that he would not be calling the Nonidentifying Witnesses to testify, the district court correctly concluded that Rule 803(1) did not permit Brewer to cross-examine McCabe about the Nonidentifying Witnesses' failure to identify Brewer.

### Conclusion

The judgment of the district court is affirmed.