2008 UT App 345

**STATE of Utah, in the interest of T.V., a person under eighteen years of age.**

**T.V., Appellant,**

**v.**

**State of Utah, Appellee.**

**No. 20070635–CA.**

Court of Appeals of Utah.

Sept. 25, 2008.

Kristine M. Rogers, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Ryan D. Tenney, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, McHUGH, and ORME.

OPINION

McHUGH, Judge:

¶ 1 T.V. appeals his conviction for possession of a firearm by a restricted person, *see* Utah Code Ann. § 76–10–503 (2003). T.V. argues there was insufficient evidence to establish that the weapon he brandished was a firearm as defined by Utah Code section 76–10–501(9)(a). We affirm.

BACKGROUND [1]

¶ 2 On November 19, 2006, the victim, A.M., was walking to the store with his little brother. As they approached the store, A.M.

---

1. "We recite the facts from the record in the light most favorable to the findings of the trial court." *State v. Moosman*, 794 P.2d 474, 476 (Utah 1990).

saw "[T.V.] and his other friend coming up to [him]." A.M. told his little brother to run.

¶ 3 T.V. and his friend "c[a]me closer [to A.M.], and then started like saying like [what's up] Crip and they were like, we're not talking shit no more, and then . . . [T.V.] pulled out a gun." T.V. cocked the gun and pointed it at A.M.'s face; the barrel was only five inches away. T.V. then "said something like come down [to] the store['s] side" so I can shoot you. A.M. would later testify that he was scared "[c]ause [he] thought [T.V.] was . . . going to shoot [him] for real[ ]." Nevertheless, A.M. told T.V. to "go ahead and shoot," "[bec]ause [he] saw . . . people coming out from the [surrounding] stores and . . . didn't think [T.V.] was going to do it." The confrontation ended shortly thereafter when T.V.'s friend hit A.M. across the neck, and T.V. and the friend left. A.M. "walked back home and told [his] mom and dad about" the incident. A couple of days later, A.M. reported the incident to a police officer at West High School.

¶ 4 A.M., who "g[ot] a good look at the gun when [T.V.] pointed it at [his] face," described the weapon T.V. used at trial: "It looked like a black handgun." "It . . . had a little silver thing on the back—kind of like you cocked it back." The tip of the gun was black and didn't have any other colors on it and "didn't have an orange tip." Furthermore, A.M., who was familiar with "airsoft" pellet guns and had a couple at his house, specifically testified that he didn't think the gun T.V. used was an airsoft gun. He explained that the gun T.V. used was different because it "had a kind of shine to it. Like it kind of looked like it was metal, like real metal, and then the tip wasn't orange." [2]

¶ 5 The only other eyewitness who testified at trial was J.L., T.V.'s friend. J.L. viewed the incident from across the parking lot, about thirty to forty feet away. She acknowledged that there were cars between her and the location of the confrontation and that she did not hear what was said during the incident. Nevertheless, J.L. testified that she saw the weapon used during the

confrontation and that it was "a black gun with an orange tip." She further testified: "[Once the confrontation was over,] I drove up to [T.V.] and rolled down my window, and I was like what are you doing with a fake gun? Trying to scare people with a fake gun? And I laughed, cause it was funny to me. . . ."

¶ 6 After hearing the evidence, the trial court determined that the weapon used during the confrontation was a firearm and not an airsoft gun.[3] Although the trial court acknowledged J.L.'s testimony, it determined that A.M. was more credible, stating that he was "the person most likely to know" whether the weapon was a firearm. The trial court made that determination because A.M. "had the best view" of the weapon.

¶ 7 T.V. appeals, arguing that even with A.M.'s testimony there was insufficient evidence to conclude that the weapon used during the confrontation was a firearm as defined by Utah Code section 76–10–501(9)(a), as opposed to an airsoft gun as T.V. claims.

## ISSUE AND STANDARD OF REVIEW

¶ 8 T.V. appeals his conviction of being a restricted person in possession of a firearm, see Utah Code Ann. § 76–10–503 (2003), arguing that "[t]here was insufficient evidence to prove beyond a reasonable doubt that [the weapon] T.V. possessed [was] a firearm." "When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination. . . ." In re V.T., 2000 UT App 189, ¶ 8, 5 P.3d 1234. We will reverse the court's ruling only when it is " 'against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.' " Id. (quoting State v. Walker, 743 P.2d 191, 193 (Utah 1987)).

## ANALYSIS

¶ 9 A firearm is defined by Utah Code section 76–10–501(9)(a) as "a pistol . . . or

---

**2.** It is apparent from the record that orange tips are generally associated with toy guns.

**3.** The actual gun used during the incident was not produced, and T.V. did not testify.

any device that could be used as a dangerous weapon from which is expelled a projectile by action of an explosive." Utah Code Ann. § 76–10–501(9)(a). T.V. argues there was insufficient evidence to establish that the gun in question could "expel[ ] a projectile by action of an explosive" because the only testimony presented by the prosecution was A.M.'s description of the weapon. We disagree.

¶ 10 During oral argument, T.V. claimed that there was no direct or circumstantial evidence that the gun was a firearm. A.M.'s testimony, which we have quoted in the recital of facts, belies that contention. Even if A.M.'s description of the gun is circumstantial evidence, as opposed to direct evidence, that evidence is competent to support T.V.'s conviction.[4] The Utah Supreme Court has established that "a conviction can be based on sufficient circumstantial evidence." *State v. Brown*, 948 P.2d 337, 344 (Utah 1997) (upholding conviction of aggravated murder even though "there was no direct evidence"); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *State v. Lyman*, 966 P.2d 278, 281 (Utah Ct.App.1998) (upholding theft conviction based on circumstantial evidence). We see no reason why circumstantial evidence should be considered any less probative in delinquency proceedings before the juvenile court.

¶ 11 Moreover, in situations nearly identical to the case at bar, i.e., where there is testimony describing the physical appearance of a gun but where the gun itself has not been introduced at trial, other jurisdictions have accepted circumstantial evidence as proof that a purported weapon was a firearm. These jurisdictions have consistently ruled that descriptive testimony—albeit circumstantial—is sufficient to support a finding that the weapon used was in fact a firearm.[5] Three examples are illustrative.

¶ 12 In *United States v. Jones*, 16 F.3d 487 (2d Cir.1994), the defendant argued that there was insufficient evidence to establish his use of a firearm, which was required for his conviction of "using a firearm during a crime of violence." *Id.* at 489. *See generally* 18 U.S.C. § 921(a)(3) (2000) (defining firearm as an object which "expel[s] a projectile by the action of an explosive"). The only evidence concerning the weapon came from witnesses who testified that they saw the defendant holding a gun and "described it as silver with a white handle." *Jones*, 16 F.3d at 490. "[T]he eyewitnesses ... were not familiar with weapons[, a]nd they did not observe the gun at close range." *Id.* at 491. Nevertheless, the court determined that the evidence "was sufficient to permit a reasonable jury to infer that the object displayed by [the defendant] ... was in fact a 'firearm.' " *Id.*

¶ 13 Similarly, in *Parker v. United States*, 801 F.2d 1382 (D.C.Cir.1986), the defendant argued that there was insufficient evidence to establish his use of a firearm during a crime of violence. *See id.* at 1383. In that case, the only evidence regarding the weapon came from two employees who were present during the robbery. One employee "testified that the gun was 'silver' with a 'vinyl-looking' brown handle"; the other employee "testified that she saw the brown handle of 'a pistol, [a] small one, like the policemen use.' " *Id.* (al-

---

4. Circumstantial evidence is defined as "[e]vidence based on inference and not on personal knowledge or observation." *Black's Law Dictionary* 595 (8th ed. 2004). Direct evidence is defined as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Id.* at 596. In this case, A.M. had personal knowledge of airsoft guns and testified that the weapon he observed T.V. brandishing was different than an airsoft gun. His testimony is direct evidence that the weapon was not an airsoft gun and circumstantial evidence that the weapon was instead a real gun, which "expel[s] a projectile by action of an explosive," *see* Utah Code Ann. § 76–10–501(9)(a) (2003).

5. *See United States v. Dobbs*, 449 F.3d 904, 910–11 (8th Cir.2006); *United States v. Lankford*, 196 F.3d 563, 576 (5th Cir.1999); *United States v. Hunt*, 187 F.3d 1269, 1270–71 (11th Cir.1999); *United States v. Beverly*, 99 F.3d 570, 571–73 (3d Cir.1996); *United States v. Moore*, 25 F.3d 563, 568 (7th Cir.1994); *United States v. Jones*, 16 F.3d 487, 490–91 (2d Cir.1994); *United States v. Kirvan*, 997 F.2d 963, 966–67 (1st Cir.1993); *United States v. Jones*, 907 F.2d 456, 460 (4th Cir.1990), *superseded on other grounds as recognized by United States v. Jakobetz*, 955 F.2d 786, 805 (2d Cir.1992); *Parker v. United States*, 801 F.2d 1382, 1383–85 (D.C.Cir.1986); *State v. Rice*, 2007 ME 122 ¶¶ 21–30, 930 A.2d 1064, 1068–70 (Me.2007).

teration in original). Neither employee was a weapons expert, and the gun had remained tucked in at the defendant's waist during the crime. *See id.* at 1383–84. However, the court determined that the evidence was sufficient and affirmed the defendant's conviction. *See id.* at 1385.[6]

¶ 14 In *State v. Rice,* 2007 ME 122, 930 A.2d 1064, the defendant argued that there was insufficient evidence to enhance his convictions based upon the use of a firearm. *See id.* ¶ 1, 930 A.2d at 1066. *See generally* Me.Rev.Stat. Ann. 17–A, § 2(12–A) (2006) ("[A] firearm means any weapon ... which is designed to expel a projectile by the action of an explosive...."). The only testimony regarding the weapon came from the sole victim who "testified to the threatening manner in which the gun was displayed toward her" but "could not describe the gun that the [defendant] was holding, except that it was black." *Rice,* 2007 ME 122, ¶¶ 5, 10, 930 A.2d at 1066–67. Nevertheless, the Supreme Judicial Court of Maine determined that "the victim's testimony was sufficient to establish [the defendant]'s use of [a] firearm" and affirmed the conviction. *Id.* ¶ 29, 930 A.2d at 1070.

¶ 15 Utah's established rule on the use of circumstantial evidence, *see State v. Brown,* 948 P.2d 337, 344 (Utah 1997), is consistent with the holdings in these examples and those of the other jurisdictions that have considered the issue.[7] We join these jurisdictions in holding that " 'lay testimony from eyewitnesses can be sufficient to support a finding that an object is, in fact, a firearm.' " *Rice,* 2007 ME 122, ¶ 24, 930 A.2d at 1069 (quoting *United States v. Dobbs,* 449 F.3d 904, 911 (8th Cir.2006)); *see also United States v. Hunt,* 187 F.3d 1269, 1270–71 (11th Cir.1999) (noting this approach is consistent with that "of all the other circuits that have addressed the issue").

¶ 16 We return now to the evidence in this case. A.M. "g[ot] a good look at the gun" when it was five inches away from his face. A.M. indicated the approximate size of the weapon[8] and described it as a black, metal handgun with "a little silver thing on the back—kind of like you cocked it back." Standing alone, this evidence is at least comparable to, if not superior than, the evidence presented in the highlighted decisions from the other jurisdictions. Additionally, in this case, A.M.'s testimony directly refuted T.V.'s argument that the gun was fake. A.M. testified that he owned airsoft guns, was familiar with them, and that he believed the weapon used by T.V. "was a real gun." A.M. explained that "the gun [T.V.] pointed at [him] didn't look like" an airsoft gun because it "had a kind of shine to it. Like it kind of looked like it was metal, like real metal, and then the tip wasn't orange."[9]

¶ 17 Viewing the evidence in this case and all reasonable inferences that may be drawn therefrom in a light most favorable to the juvenile court's determination, we are not convinced that T.V.'s conviction is against the clear weight of the evidence or that a mistake has been made. A.M.'s description of the gun and his direct refutation of T.V.'s argument that the weapon was really a toy constitute sufficient—albeit circumstantial— evidence that the weapon T.V. brandished was in fact a firearm. Accordingly, we affirm.

¶ 18 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.

---

6. The court's opinion was authored by then Federal Circuit Judge Antonin Scalia.

7. *See supra* note 5.

8. The record is unclear on the size of the gun because A.M. described the gun as "that big," and there is no clarification as to how far apart his hands were when he illustrated the size. However, A.M. did describe the gun as a "handgun," giving some indication of its size.

9. J.L. testified that she saw an orange tip on the gun. However, the trial court was free to weigh this competing evidence and determine which witness was more credible. Given that J.L., a self-described friend of T.V., observed the event from more than thirty feet away and that her view was obstructed by the cars in the parking lot, we cannot fault the trial court for finding that A.M., who observed the gun from five inches away, was the more credible witness.