**UNITED STATES of America**

v.

**Alan Barton NACHAMIE, et al., Defendants.**

**No. S3 98 CR. 1238(SAS).**

United States District Court, S.D. New York.

March 15, 2000.

See, also, 91 F. Supp.2d 565.

Jonathan N. Halpern, Robert R. Strang, Erika K. Thomas, United States Attorney's Office, Southern District of New York, New York, NY, for U.S.

Valerie Amsterdam, New York, NY, for Jose Hernandez.

Gerald J. McMahon, New York, NY, for Alan Barton Nachamie.

Diarmuid White, New York, NY, for Edwin Tunick.

Jeremy F. Orden, New York, NY, for Lydia Martinez.

Anthony D. Denaro, P.C., Hempstead, NY, for Ghanshyam Kalani.

Richard A. Tanner, Dickson, Ashenfelter, Slous, Tanner & Trevenen LLP, Upper Montclair, NJ, for Donna Vining.

Robert S. Fink, Caroline Rule, Kostelanetz & Fink, LLP, New York, NY, for Kenneth Schrager.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This opinion addresses several pre-trial motions filed by the defendants in this prosecution for Medicare fraud. First, defendant Alan Barton Nachamie moves to prevent the Government from introducing evidence of two prior convictions. Second, if the Court grants Nachamie's motion, defendants Kenneth Schrager, Donna Vining, and Ghanshyam Kalani move to sever their trials from Nachamie's trial. On the other hand, if the Court denies Nachamie's motion, defendant Edwin Tunick moves to sever his trial from Nachamie's trial. Third, defendants Edwin Tunick and Jose Hernandez move to sever an object of the alleged conspiracy that was added by the Government in a recent superseding indictment. The Government opposes each defense motion, including the conditional severance motions. In addition, the Court addresses an unanticipated problem with the scheduled trial date.

## I. BACKGROUND

The background of this prosecution can be found in this Court's opinion on the Government's motion to quash a number of subpoenas served by Hernandez pursuant to Rule 17(c). *See United States v. Nachamie, et al.*, 91 F.Supp.2d 552, 554–57 (S.D.N.Y. 2000) (*"Nachamie I"*). On February 8, 2000, the grand jury returned a Third Superseding Indictment in this case. As in the previous indictments, Count One of the Third Superseding Indictment alleged that the defendants had conspired to commit offenses against the United States. The Third Superseding Indictment, however, contained a new allegation regarding the object of the alleged conspiracy:

It was a part and object of said conspiracy that ALAN BARTON NACHAMIE, a/k/a "Alan Barton," a/k/a "Dr. Lewellyn," EDWIN TUNICK, LYDIA MARTINEZ, and JOSE HERNANDEZ, the defendants, together with co-conspirators not named as defendants herein, unlawfully, willfully and knowingly, would and did solicit and receive remuneration (including kickbacks, bribes and rebates) directly and indirectly, overtly and covertly, in cash and in kind in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole or in part under a Federal health care program, to wit, the defendants, and their co-conspirators, solicited kickback payments from an individual associated with a medical laboratory located in Florida in return for ordering and arranging for that medical laboratory to conduct tests that were to be billed to Medicare, in violation of Section 1320a–7b(b)(1)(A) of Title 42, United States Code.

Third Superseding Indictment, ¶ 14. In addition, the Third Superseding Indictment states that, as one of the "means and methods of the conspiracy:"

ALAN BARTON NACHAMIE, a/k/a "Alan Barton," a/k/a "Dr. Lewellyn," EDWIN TUNICK, LYDIA MARTINEZ, JOSE HERNANDEZ, and others, also solicited kickback payments from an individual associated with a medical laboratory located in Florida in return for ordering and arranging for that medical laboratory to conduct laboratory tests on the beneficiaries that were to be billed to Medicare.

*Id.*, ¶ 15(i). Finally, the Third Superseding Indictment alleges the following incident as one of the overt acts of the conspiracy:

On or about October 21, 1997, JOSE HERNANDEZ received a check made payable to "Julie Hernandez," for $8,150

and drawn on the account of Key Biscayne Clinical Laboratories Inc.

*Id.,* ¶ 16(ff). Notably, these new allegations involve only the four defendants who are not doctors (the "non-doctor defendants").

## II. MOTION TO EXCLUDE PRIOR CONVICTIONS

Defendant Nachamie moves to preclude the Government from introducing two prior convictions, both from 1977:(1) attempted arson in the third degree, in New York State Court, Bronx County; and (2) conspiracy to commit health care fraud, in United States District Court, Southern District of New York.[1] According to the Government, the attempted arson conviction was connected to the health care fraud, because it involved Nachamie's attempt to burn down one of his clinics. *See* March 7 Tr., at 25. Nachamie argues that the Government should be prevented from introducing these prior convictions because they are not relevant under Fed.R.Evid. 404(b) and are substantially more prejudicial than probative under Fed.R.Evid. 403. The Government opposes Nachamie's motion.

Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes,

such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). "In *Huddleston v. United States,* [485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988),] the Supreme Court outlined the test for admission of other acts evidence under Rule 404(b)." *United States v. Gilan,* 967 F.2d 776, 780 (2d Cir.1992).

First, the evidence must be introduced for a proper purpose, such as proof of knowledge or identity. Second, the offered evidence must be relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b). Third, the evidence must satisfy the probative-prejudice balancing test of Rule 403. Fourth, if the evidence of other acts is admitted, the district court must, if requested, provide a limiting instruction for the jury.

*Id.* (citations omitted).

 The Government bears the burden of demonstrating the admissibility of evidence under Rule 404(b), although the Second Circuit has never stated it in those precise terms. *See United States v. Zackson,* 12 F.3d 1178, 1182 (2d Cir.1993) ("Under Federal Rules of Evidence 403 and 404(b), the government may introduce evidence of a defendant's prior crime if that evidence is relevant for a reason other than to show criminal propensity, and if

---

1. The Government has been a little unclear as to the exact nature of Nachamie's federal conviction. First, in its letter to Nachamie pursuant to Rule 404(b), the Government indicated that it intended to introduce "his conviction for conspiracy to commit Medicaid fraud in United States District Court, Southern District of New York." January 3, 2000 Letter from Robert R. Strang, Assistant United States Attorney, to Gerald J. McMahon, counsel for Nachamie. Then, in its letter to the Court arguing in opposition to Nachamie's motion, the Government indicated that it intended to introduce evidence that Nachamie "pled guilty to healthcare fraud in federal court." March 1, 2000 Letter from Robert R. Strang, Assistant United States Attorney ("Gov.404(b) Letter"), at 1. Finally, at oral argument, the Government mentioned that Nachamie had a federal court conviction for Medicare fraud and a state court conviction for a lesser included offense stemming from a charge of Medicaid fraud. *See* Transcript of March 7, 2000 Conference ("Mar. 7 Tr."), at 76–78. In any event, what the Government has consistently stated is that it intends to introduce evidence that Nachamie pled guilty to conspiracy to commit health care fraud in the United States District Court for the Southern District of New York. That is one of the convictions at issue here; the other is the state conviction for attempted arson. The Government may not introduce any state court conviction related to Medicaid fraud, because that conviction was not included in its Rule 404(b) letter.

the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice."); *United States v. Levy,* 731 F.2d 997, 1002 (2d Cir.1984) ("The government . . . must explain in detail the purposes for which the evidence is sought to be admitted."); *see also United States v. Garcia–Montalvo,* 885 F.Supp. 99, 101 (S.D.N.Y.1995) ("The Government has clearly met three of the four requirements for admissibility under Rules 404(b) and 403."). At least one circuit has placed the burden on the Government explicitly. *See United States v. Arambula–Ruiz,* 987 F.2d 599, 602 (9th Cir.1993) ("The Government has the burden of proving that the evidence meets all of the [Rule 404(b)'s] requirements."); *see also* 2 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence, § 404.23[5][b], at 404–138 (2d ed. Aug.1997) ("Once the question of admissibility has been raised, the party offering the evidence has the burden of convincing the court that it is relevant to a consequential fact in issue other than propensity, and that Rule 403 does not require exclusion."). Finally, the Supreme Court's decision in *Huddleston* suggests that, at least for the first two requirements of proper purpose and relevancy, the Government bears the burden. *See Huddleston,* 485 U.S. at 691, 108 S.Ct. 1496 (evidence must be offered for proper purpose and must be relevant).

## A. Proper Purpose

■ The Government argues that both of Nachamie's prior convictions will help explain the background of the conspiracy because an accomplice witness will testify at trial that he participated in both the health care fraud conspiracy for which both he and Nachamie were convicted and the alleged Medicare conspiracy at issue in this case. According to the Government, Nachamie's prior criminal relationship with the accomplice witness will help explain why Nachamie invited that witness into the alleged conspiracy and why the other defendants trusted the accomplice witness enough to speak openly about their own criminal conduct. The Second Circuit has stated repeatedly:

> Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed.

*United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992); *see also United States v. Williams,* 205 F.3d 23, 32 (2d Cir.2000). The Government has established that both convictions are being offered for the proper purpose of establishing the background of the conspiracy.

■ In addition, the Government argues that the conspiracy conviction is being offered to prove his knowledge or intent, both of which are proper purposes under the explicit language of Rule 404(b). In response, Nachamie argues that neither his knowledge nor his intent are disputed issues in this case. The Second Circuit has explained that, if a defendant removes the element of intent or knowledge from a case, prior act evidence cannot be introduced for the purpose of establishing that element. *See United States v. Colon,* 880 F.2d 650, 656–57 (2d Cir.1989); *United States v. Figueroa,* 618 F.2d 934, 941–42 (2d Cir.1980). But the defendant must clearly and unequivocally remove the element from the case:

> Whether an issue remains sufficiently in dispute for similar acts evidence to be material and hence admissible, unless the prejudicial effect of the evidence substantially outweighs its probative value, depends not on the form of words used by counsel but on the consequences that the trial court may properly attach to those words. When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue

and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

*Figueroa,* 618 F.2d at 942; *see also United States v. Mohel,* 604 F.2d 748, 754 (2d Cir.1979) ("It is enough that defendant has unequivocally offered the concession and then acts accordingly.").

˙ In his initial attempt to remove the elements of knowledge and intent from the case, counsel for Nachamie wrote, in a letter to the Court dated March 6, 2000: "In this case, it is defendant Nachamie's contention that he did not commit any acts giving rise to criminal liability, not that he committed acts by mistake or without criminal intent or knowledge." March 6, 2000 Letter from Gerald J. McMahon, counsel for Nachamie. At oral argument, however, it became clear that Nachamie was not removing the element of knowledge from this case:

> THE COURT: ... Are you going to open and say, ladies and gentlemen, if you hear the doctors that he recruited did things here that were wrong, that is for those doctors to worry about. My client did not know it, didn't encourage it, they didn't ask him to do it, did no part of it. That is what the doctors did. My client knew nothing about it. Isn't that the theory of your defense?
>
> . . .
>
> MR. McMAHON [Nachamie's counsel]: Well, Judge, if my client's function was to be in the clinic supervising the doctors—
>
> THE COURT: Right.
>
> MR. McMAHON:—then I think that the component of his knowledge would be more relevant. The government is well aware that that was not his role. The people whose role that was to deal with the doctors are government witnesses Aziz, Sinabi and Hassan. That was never my client's role. It is not a question of his knowledge. Judge, if somebody is carrying a package of narcotics to an

undercover and his defense is well, I didn't know, that is one situation. I am in a situation where I am not in a clinic, I am not supervising the doctors, I am not seeing what they are doing, nor am I obligated to see what they were doing.

> THE COURT: That is all true, but the defense is, so whatever went on there is something I didn't know about. I recruited doctors, I set up clinics, but I had no day-to-day supervision, I didn't know it was going on there. Isn't that putting his knowledge directly in contention, knowledge of the scheme, knowledge of the wrongdoing, the issue of knowledge is the defense?
>
> MR. McMAHON: I don't think that is the kind of knowledge that allows the introduction of other crimes evidence.
>
> THE COURT: I haven't seen cases that distinguish one kind of knowledge from another kind that has to do with knowledge.
>
> MR. McMAHON: I gave the example of a person who carries contraband.
>
> THE COURT: That is very nice.
>
> MR. McMAHON: He has physical presence, he has the contraband.
>
> THE COURT: That is one example. Knowledge is an issue. You're saying well, he knew these people, he recruited these doctors, he set up clinics and went to nursing homes and suggested patients go into those very clinics. He didn't know the false claims were being submitted. I don't know how that is not knowledge of the scheme. I don't think you can answer the question because I think it is an issue of knowledge.
>
> MR. McMAHON: I don't think it is an issue of knowledge because the distinction is the physical presence.
>
> THE COURT: Do you? I don't think I understand that distinction. Does the government think knowledge is an issue?
>
> MR. STRANG [Assistant U.S. Attorney]: Yes.

MR. HALPERN [Assistant U.S. Attorney]: More so now since Mr. McMahon has been speaking, knowledge is more of an issue than he set forth in his letter.

MR. [McMAHON]: [2] Judge, the bulk of my argument is with respect to the prejudice component.

Mar. 7 Tr., at 73–75. This colloquy demonstrates that Nachamie has failed to remove the element of knowledge from this case. See Colon, 880 F.2d at 659 ("A defendant may not purposely use ambiguity tactically, seeking to gain the one advantage of barring admission of prior acts evidence by proffering a particular defense theory, only to later seek the additional advantages stemming from arguing lack of intent to the jury."); see also United States v. Coyle, No. 1S 93 Cr. 68(SS), 1993 WL 378332, at *6 & n. 5 (S.D.N.Y. Sep. 17, 1993) (allowing admission of prior act evidence because defendant's attempts to remove elements of knowledge and intent from case were not sufficient). As a result, Nachamie's conviction for conspiracy to commit health care fraud is offered for the proper purpose of demonstrating his knowledge of the Medicare fraud conspiracy alleged in this case.[3]

## B. Relevance

Next, the Court must determine whether Nachamie's prior convictions are "relevant to an issue in the case." Gilan, 967 F.2d at 780. This factor involves an examination of whether "the jury could reasonably find by a preponderance of the evidence that the [prior] act occurred and

that the defendant committed the act." United States v. Ramirez, 894 F.2d 565, 569 (2d Cir.1990); see also Huddleston, 485 U.S. at 689, 108 S.Ct. 1496 ("In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the [prior] act occurred and that the defendant was the actor."). In this case, Nachamie does not dispute that he was convicted of both attempted arson and conspiracy to commit health care fraud; indeed, he pled guilty to both charges. See Mar. 7 Tr., at 77–78. Thus, Nachamie's prior convictions are relevant.

## C. Prejudice

Rule 404(b) explicitly prohibits the admission of evidence of other crimes "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). The danger inherent in Rule 404(b) is that, even though the evidence of other crimes is admissible for a proper purpose, the jury still might use it as evidence of the defendant's bad character. See Figueroa, 618 F.2d at 943 ("A prior conviction is material to a defendant's intent (when intent is in issue), but it is also prejudicial to the extent that it also tends to prove a defendant's propensity to commit crimes."). Recognizing the importance of this concern, the Supreme Court has emphasized "the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice." Huddleston, 485 U.S. at 691, 108

---

2. The transcript misidentifies Mr. Halpern as the speaker of this statement.

3. Nachamie urges the Court to wait until the close of his case before ruling on his motion, so that the Court can make a fully informed determination as to whether he has removed the element of knowledge from the case. "[I]f the evidence is offered to prove the defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue." Colon, 880 F.2d at 660 (quotation marks and citation omitted). Nevertheless, the Second

Circuit has "recognized an exception to this general rule in cases where there was no doubt that the issue of intent would be disputed in the case." Id. Because various co-defendants have moved to sever their trials from Nachamie's trial, depending upon the outcome of Nachamie's motion, the Court must rule on that motion at this stage of the proceedings. As a result, the Court has endeavored to determine whether Nachamie could remove the issue of knowledge from the case. The Court's efforts leave no doubt that he cannot.

S.Ct. 1496; *see also Gilan,* 967 F.2d at 780 (third step in Rule 404(b) analysis is whether the evidence satisfies "the probative-prejudice balancing test of Rule 403"). The Advisory Committee Notes for Rule 404(b) also stress the importance of Rule 403 screening of other crime evidence:

> No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision [sic] of this kind under Rule 403.

Rule 404(b), Advisory Committee Notes, 1972 Proposed Rules.

> Rule 403 states:
> Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *see also* Rule 403, Advisory Committee Notes, 1972 Proposed Rules (" 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). The Supreme Court has explained the important relationship between Rule 403 and Rule 404(b):

> Such improper grounds [for declaring guilt] certainly include ... generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily).... There is, accordingly, no question that

propensity would be an 'improper basis' for conviction and that evidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence.

*Old Chief,* 519 U.S. at 180–82, 117 S.Ct. 644.

In *Old Chief,* the Court defined the nature of a Rule 403 inquiry. First, a court should "decide whether a particular item of evidence raise[s] a danger of unfair prejudice." *Id.* at 182, 117 S.Ct. 644. If it does, the court must

> evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.... [A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item when faced with less risky alternative proof going to the same point.

*Id.* at 182–83, 117 S.Ct. 644. The Second Circuit has emphasized repeatedly that district courts have broad discretion to conduct Rule 403 balancing. *See Gilan,* 967 F.2d at 780 ("The trial judge is given broad discretion in making its rulings under Rules 403 and 404(b). On appeal, a ruling involving similar act evidence will be overturned only for a clear abuse of discretion."); *see also Costantino v. Herzog,* 203 F.3d 164, 173 (2d Cir.2000) ("Because the trial judge is in the best position to evaluate the evidence and its effect on the jury, [her] Rule 403 rulings are entitled to considerable deference and will not be overturned absent a clear abuse of discretion."). After considering the written submissions and oral arguments of the

parties, I conclude that both of Nachamie's prior convictions fail to pass muster under Rule 403 and therefore must be excluded.

### 1. Conspiracy to commit health care fraud

I begin with Nachamie's prior conviction for conspiracy to commit health care fraud. The Government seeks to tell the jury that Nachamie, who stands accused of Medicare fraud, pled guilty to conspiracy to commit health care fraud more than twenty years ago. Evidence that the defendant in a criminal case has committed other crimes is highly prejudicial, especially when the other crime is identical to that for which the defendant is on trial. *See Old Chief,* 519 U.S. at 185, 117 S.Ct. 644 ("Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious."); *United States v. Puco,* 453 F.2d 539, 542 (2d Cir. 1971) ("The potential for prejudice, moreover, is greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial."). At the risk of belaboring the obvious, evidence is not admissible under Rule 404(b) "to prove the character of a person in order to show action in conformity therewith," and introducing evidence that the defendant committed the same act in the past presents a strong temptation for the jury to do just that.

But the highly prejudicial nature of Nachamie's conviction satisfies only one prong of the Rule 403 balancing test. The Government has offered two proper purposes for introducing the prior conviction. Because each implicates a different concern, I will analyze the probative value of the prior conviction for each purpose separately.

#### a. Background of the conspiracy

■ The Government argues that Nachamie's prior conviction for health care fraud offers probative evidence of the background of the alleged conspiracy. The Government has proffered that an accomplice witness will testify that he participated in both the conspiracy that is the subject of Nachamie's prior conviction and the charged conspiracy. The Government argues that demonstrating the existence of a prior criminal relationship between Nachamie and the accomplice witness will help the jury understand why Nachamie and the other defendants trusted the accomplice witness enough to invite him into the alleged conspiracy and speak in his presence about their own criminal conduct.

Although the Government has demonstrated that Nachamie's prior conviction will be of some probative value in explaining the background of the conspiracy and the relationships of its members, the probative value of the prior conviction is undercut by the availability of other, less prejudicial evidence that makes the same points. *See Old Chief,* 519 U.S. at 182–83, 117 S.Ct. 644 ("If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk."). For example, defendant Nachamie admits hiring three people to supervise the doctors in his clinics; all three are now government witnesses. *See* Mar. 7 Tr., at 73. Presumably they will have a great deal to say about the background of the conspiracy. In addition, the Government acknowledges that "Nachamie and the accomplice witness have known each other for many years" and describes the accomplice witness as Nachamie's "trusted friend." Gov. 404(b) Letter, at 1–2. At trial, the accomplice witness certainly can describe his long-standing friendship with Nachamie; this will give the jury a basis for understanding why Nachamie trusted him. As for demonstrating why the other defendants trusted the witness, nothing prevents the witness from explaining his own criminal convictions. The accomplice witness can mention his own conviction for

health care fraud; he simply cannot mention that he was convicted with Nachamie. This far less prejudicial evidence will give the jury a solid understanding of the background of the conspiracy and the role of the accomplice witness in that conspiracy, without exposing Nachamie to unfair prejudice.

The Government argues that the Second Circuit has affirmed the admission of prior bad acts to "help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between co-conspirators." *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir.1993); *see also United States v. Diaz*, 176 F.3d 52, 79–80 (2d Cir.1999) (evidence of prior drug dealing "informed the jury ... how illegal relationships and mutual trust developed between co-conspirators"), *cert. denied*, —— U.S. ——, 120 S.Ct. 314, 145 L.Ed.2d 153 (1999). The Government's laundry list of Second Circuit citations is not persuasive, for three reasons. *First,* the bad act evidence introduced in those cases established a more direct link between the defendant and the co-conspirators than Nachamie's 25–year–old prior conviction does in this case. *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir.1996) ("The evidence of prior illicit activities involving Pipola and his co-conspirators explained to the jury how the relationship between Pipola and his underlings evolved."); *United States v. Araujo*, 79 F.3d 7, 8 (2d Cir.1996) (defendant's statement to government witness that she had been a courier before was admissible to demonstrate a trust relationship between witness and defendant and to explain why witness allowed defendant to participate in a drug pick-up); *Rosa*, 11 F.3d at 334 ("[T]he evidence of Rosa's prior dealings with Melendez was properly admitted to explain how the illegal relationship between the two had developed and to explain why Melendez had appointed Rosa to a leading position in the Organization."). *Second,* it is unclear whether other, less prejudicial evidence was available in those cases.

*Third,* the Government's citation to these Second Circuit cases ignores the highly deferential standard of review it applies to evidentiary rulings. In order to find an abuse of discretion in admitting prior bad act evidence, the Second Circuit "must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." *Pipola*, 83 F.3d at 566. Similarly, "[i]n reviewing a challenge to a Rule 403 balancing, [the Second Circuit] must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Rubin*, 37 F.3d 49, 53 (2d Cir.1994) (quotation marks and citation omitted). Thus, when the Second Circuit approves a district court's admission of bad act evidence, it is only approving that district court's exercise of its discretion; it is not holding that the evidence must be admitted in all similar situations. *See United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir.1984) ("[W]e are reluctant to substitute our judgment for that of the trial judge."); *United States v. Cunningham*, 194 F.3d 1186, 1195 (11th Cir.1999) ("[O]ur job as an appellate court is to determine whether the district court abused its discretion, not whether we would have admitted or excluded evidence ourselves."); *see also Araujo*, 79 F.3d at 8 ("Although there is no doubt that the testimony in question carried with it some possibility of prejudice, we cannot say that the district court abused its discretion in admitting the testimony, particularly in light of the instruction to the jury limiting its consideration of the evidence to the issue of trust and confidence between Garcia and Flores."). Indeed, the very nature of the variables involved—the other available evidence, the relationship between co-conspirators—defies a bright-line rule. *See Costantino*, 203 F.3d at 173 ("Because the trial judge is in the best position to evaluate the evidence and its effect on the jury, [her] Rule 403 rulings are entitled to considerable deference and will not be over-

turned absent a clear abuse of discretion.").

Thus, while I have considered the cases cited by the Government—and am bound by the legal principles stated therein—I must make my own assessment of the Rule 403 variables as they apply to the facts of this case. That assessment leads me to conclude that the probative value of admitting Nachamie's prior conviction for conspiracy to commit health care fraud, in order to demonstrate the background of the charged Medicare fraud conspiracy, is substantially outweighed by the danger of unfair prejudice and needless presentation of cumulative evidence.

### b. Proof of Nachamie's knowledge

■ The Government argues that Nachamie's conspiracy conviction is probative evidence of his knowledge of the charged conspiracy. This presents a somewhat closer question. While evidence of a defendant's prior conviction for the same or similar offense is highly prejudicial, *see Puco*, 453 F.2d at 542 (potential for prejudice greatly enhanced where prior offense is similar to the ones for which the defendant is on trial), that similarity is required if the prior conviction is offered to show knowledge. *See Araujo*, 79 F.3d at 8 (where knowledge or intent is in issue, similarity requirement goes to relevance). Thus, admission of a prior conviction to demonstrate a defendant's knowledge, which is contemplated by the explicit language of Rule 404(b), must be acceptable despite the high risk of prejudice.

This risk is acceptable because a prior conviction is often the only evidence—or at least the best available evidence—of knowledge. *See Huddleston*, 485 U.S. at 685, 108 S.Ct. 1496 ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). Thus, courts allow the introduction of a prior conviction for a similar crime, despite the strong possibility that jurors will use the prior conviction to find "action in conformity therewith," because the Government needs the prior conviction to prove its case. *See United States v. Teague*, 93 F.3d 81, 84 (2d Cir.1996) (evidence of possession of cocaine a week prior to arrest was proper under Rule 403 where the only other evidence of intent, the defendant's confession, was being challenged); *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir.1987) ("In determining whether to allow 'similar act' evidence, the trial judge is required to perform a balancing analysis, and [s]he may exclude the evidence, even if it has some relevance to prove knowledge, if its probative value is substantially outweighed by its potential for prejudice.").

If the existence of other evidence makes the prior conviction less necessary to the Government's case, then a court should give more weight to the risk of prejudice to the defendant. *See* 2 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence, § 404.21[3][a], at 404–62 (2d ed. Aug.1997) ("For example, the incremental value of other-crime evidence on the issue of intent may vary from being almost de minimis to being critical. If the incremental value is slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403."). Indeed, the Supreme Court noted that "evidence of a prior conviction is subject to analysis under Rule 403 for *relative* probative value and for prejudicial risk of misuse as propensity evidence." *Old Chief*, 519 U.S. at 182–85, 117 S.Ct. 644 (emphasis added) (noting McCormick's suggestion that "Rule 403's 'probative value' signifies the 'marginal probative value' of the evidence relative to the other evidence in the case") (citation omitted).

Given the highly prejudicial nature of Nachamie's prior conviction for conspiracy to commit health care fraud, the question before the Court is whether the Government needs evidence of that conviction in order to prove Nachamie's knowledge of

the Medicare conspiracy at issue in this case. In order to resolve this question, the Court directed the Government to submit a written response to the following question:

> Other than defendant Nachamie's 1977 prior convictions for Medicaid fraud or related criminal conduct, what evidence does the Government intend to use in order to prove Nachamie's knowledge of the alleged criminal conspiracy? In response to this question, the Government need not identify specific documents or witnesses. Rather, the Government should identify categories or types of evidence—such as documents, accomplice witnesses, or fact witnesses—and summarize how, in its view, each category or type of evidence will prove Nachamie's knowledge.

Order dated March 9, 2000 ("Mar. 9 Order"), at 1–2. On March 12, 2000, the Government responded as follows:

> The Government's primary proof of Alan Barton Nachamie's criminal knowledge will comprise fact witness testimony (including the testimony of individuals cooperating with the Government), documents (including documents seized during Court-ordered searches of Nachamie and Tunick's Florida and New York offices), and tape recordings (including statements made by or in the presence of Nachamie). Fact witness testimony and, in particular, cooperating witness testimony, will be offered to demonstrate that Nachamie was aware of the fraudulent and illegal nature of his business with Edwin Tunick, that he authorized procedures to be fraudulently billed, that he was told, among other things, that his company was engaging in illegal acts, that he gave instructions to individuals to engage in illegal acts, and that he made statements and otherwise acted in a manner reflecting consciousness of guilt. Documents will also show that he understood the operations of his business and its illegal nature. Tape recordings will also demonstrate

his awareness of the operations of his business, its illegal nature, and will further reflect his consciousness of guilt. March 12, 2000 Letter from Robert R. Strang, Assistant United States Attorney.

The Government's response, along with all of the other written submissions and oral argument, demonstrate that introducing Nachamie's prior conviction would be cumulative. The Government will present fact witnesses, cooperating witnesses, documents, and tape recordings, all of which allegedly demonstrate Nachamie's knowledge of the charged conspiracy. Given that the Government has so much other evidence of Nachamie's knowledge, the risk of unfair prejudice resulting from testimony regarding his prior conviction for conspiracy to commit health care fraud substantially outweighs its probative value and would constitute needless presentation of cumulative evidence.

#### 2. Attempted arson

■ I turn now to Nachamie's conviction for attempted arson. The Government intends to introduce this conviction to demonstrate the background of the charged conspiracy. The Second Circuit has suggested, however, that prior act evidence admitted to demonstrate the background of a conspiracy would be unfairly prejudicial if the prior act involved conduct "more sensational or disturbing" than the crimes alleged. *See United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (prior act evidence not unfairly prejudicial because that evidence "did not involve conduct any more sensational or disturbing" than the crimes at issue); *see also Pitre*, 960 F.2d at 1120 (quoting *Roldan–Zapata*). Attempted arson is certainly more sensational and more disturbing than Medicare fraud. In addition, for the reasons stated above, the Government has a wealth of other evidence with which to demonstrate the background of the alleged conspiracy. *See* pp. 142–43 *supra.* As a result, the probative value of Nachamie's attempted arson conviction is sub-

stantially outweighed by the danger of unfair prejudice and needless presentation of cumulative evidence.

### D. Limiting instruction

Finally, the Government argues that a limiting instruction will cure any potential prejudice that Nachamie might suffer if the jury learns about his prior convictions. In *Huddleston*, the Supreme Court noted that the "protection against ... unfair prejudice" comes in part from the fact that "the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston*, 485 U.S. at 691–92, 108 S.Ct. 1496. In support of its contention, the Government again cites several cases in which the Second Circuit held that the district court did not abuse its discretion in determining that a limiting instruction was sufficient to overcome any risk of prejudice. As explained above, however, what those cases confirm is the ability of the district court to determine in a given case whether limiting instructions are sufficient to cure any risk of prejudice. *See* pp. 143–44 *supra*. The Second Circuit did not—and could not—hold that, as a matter of law, limiting instructions will always cure the risk of undue prejudice.

In this case, the risk of prejudice to Nachamie is so overwhelming—and the probative value so relatively small—that a limiting instruction would provide insufficient protection. As the Second Circuit recently stated:

> Of course, jurors are presumed to follow instructions from the court. But it would be quixotic to expect the jurors to perform such mental acrobatics called for by the district judge. To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities. The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense.

*United States v. Jones*, 16 F.3d 487, 493 (2d Cir.1994) (quotation marks and citations omitted). Admittedly, the facts in *Jones* are extreme—the Second Circuit stated that the government had added a felon-in-possession count, following a hung jury, "solely to buttress its case on the other counts." *Id.* at 492. Nevertheless, the principles in *Jones* apply to this case, where the introduction of Nachamie's prior convictions carries a very high risk of prejudice and the Government has less prejudicial ways to prove its case. In *Huddleston*, the Supreme Court listed four ways to protect against unfair prejudice; limiting instructions were one way, but Rule 403 balancing was another. *See Huddleston*, 485 U.S. at 691–92, 108 S.Ct. 1496.

In reaching its conclusion that the Government cannot introduce evidence of Nachamie's prior convictions, the Court is sensitive to "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice." *Old Chief*, 519 U.S. at 186, 117 S.Ct. 644. Nevertheless, where the Government seeks to prove its case by using highly prejudicial evidence that is cumulative of other available evidence, that standard rule must give way. Rule 403 vests a district court with broad discretion to exclude evidence that carries a danger of "unfair prejudice" or "needless presentation of cumulative evidence." Fed.R.Evid. 403. Using Nachamie's prior convictions for attempted arson and conspiracy to commit health care fraud in this trial for conspiracy to commit Medicare fraud carries both these dangers. As a result, the Government has failed to carry its burden of demonstrating that these convictions are admissible under Rule 404(b).

## III. MOTION TO SEVER TRIAL OF DOCTOR DEFENDANTS

Because the Government cannot introduce Nachamie's prior conviction at his

trial, the Court now must consider motions filed by all three "doctor defendants"— Schrager, Vining, and Kalani—to sever their trial from Nachamie's trial.[4] The doctors argue that Nachamie's prior conviction is crucial to their defense and would be admissible at a separate trial. According to the doctors, their defense will be that they were unwitting dupes of Nachamie, who lured them into his scheme to commit Medicare fraud. The doctors argue that Nachamie's prior conviction for conspiracy to commit health care fraud provides strong support for their defense theory. The Government opposes this severance motion.

Fed.R.Crim.P. 14, entitled "Relief from Prejudicial Joinder," states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

Fed.R.Crim.P. 14. The Supreme Court recently discussed the proper standard for determining whether to grant a defendant's motion for severance:

> [W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against

a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.... Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

*Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Turning to the facts of *Zafiro*, the Court noted that "petitioners do not articulate any specific instances of prejudice." *Id.* The Court then rejected the argument that the mutually antagonistic nature of their defenses, standing alone, justified a severance. *Id.* at 539–41, 113 S.Ct. 933. "Because petitioners have not shown that their joint trial subjected them to any legally cognizable prejudice, we conclude that the District Court did not abuse its discretion in denying petitioners' motions to sever." *Id.* at 541, 113 S.Ct. 933.

In analyzing the doctors' motion for severance, it is first necessary to determine whether Nachamie's prior convictions would be admissible in a separate trial. The next step in the analysis is whether the doctors would suffer sufficient prejudice from the exclusion of that evidence in a joint trial to justify severance.

### A. Would Nachamie's Prior Convictions be Admissible?

The doctor defendants put forth two theories under which Nachamie's prior convictions would be admissible in a separate trial.

### 1. Rule 404(b)

■ Defendant Schrager argues that Nachamie's prior conviction for conspiracy to commit health care fraud would be admissible in a separate trial under Rule 404(b), because it is relevant to show both that Nachamie knew the conspiracy was

---

4. Because the Court is excluding evidence of Nachamie's prior convictions, it need not consider the severance motion filed by defendant Tunick.

illegal and that Schrager did not.[5] Schrager cites *United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir.1984), in which the Second Circuit ruled that evidence that co-conspirators had duped someone else into importing narcotics five months earlier was admissible under Rule 404(b) to support the defendant's argument that he also had been duped. First, the Second Circuit clarified the applicable standard when a defendant seeks to introduce evidence under Rule 404(b):

> [W]e believe the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword.... [The] possibilities of prejudice must be assessed even in cases where the prosecutor offers similar acts evidence, not to prove the character of the accused, but to prove one of the permissible subsidiary facts listed in Rule 404(b), such as intent or plan. However, risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense. In such cases the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense.

*Aboumoussallem*, 726 F.2d at 911–12 (citations omitted). The Second Circuit then turned to the facts of the case:

> The proffered evidence satisfies the liberal relevancy standard of the Federal Rules of Evidence: It tends to make the existence of a consequential fact, [defendant's] knowledge, less probable. What [defendant] sought to prove was that Nazih and Pierre had a plan to import narcotics from Lebanon into the United States using duped couriers. The existence of such a plan would lend some support to the inference that [defendant]

was duped and thereby bolster his defense of lack of knowledge.

*Id.* at 912; *see also United States v. Blum*, 62 F.3d 63, 68 (2d Cir.1995) (evidence that government witness had his own motive to falsify a logbook was admissible under Rule 404(b), where prosecution's theory was that the defendant had instructed the witness to falsify the logbook). Applying *Aboumoussallem* to the facts of this case, Schrager argues that Nachamie's prior conviction is relevant to prove that Schrager was duped into participating in the charged conspiracy.

The Government argues that Nachamie's prior conviction would not be admissible at a separate trial under Rule 404(b), because Schrager is only seeking to prove Nachamie's character in order to demonstrate action in conformity therewith. The Government cites *United States v. Puckett*, 692 F.2d 663 (10th Cir.1982), in which the Tenth Circuit affirmed the district court's refusal to allow a defendant to call witnesses who would have testified that they had been "conned" by the same third party as the defendant, because those witnesses were involved "in transactions unrelated and dissimilar to the crimes charged in the indictment." *Id.* at 670–71. According to the Government, Nachamie's prior convictions did not involve a practice of duping innocent third parties into participating in a fraudulent scheme.

Although the Second Circuit made clear that a less restrictive standard of admissibility applies when a defendant seeks to introduce evidence under Rule 404(b), the defendant still must offer evidence that complies with the plain language of the Rule, which states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b); *see also Blum*, 62 F.3d at 68 (evidence offered to prove mo-

---

**5.** This rationale would not apply to Nachamie's conviction for attempted arson, because it is not a similar act. *See United States v. Araujo*, 79 F.3d 7, 8 (2d Cir.1996) ("Where only knowledge or intent is in issue, the similarity requirement is simply a rule of relevance.").

tive of government witness); *Aboumous-sallem*, 726 F.2d at 910–12 (evidence offered to prove common plan of third party and lack of knowledge of defendant). The doctors cannot offer evidence of Nachamie's prior conviction at a separate trial in an effort to show that he is a bad person.

Schrager argues that Nachamie's prior conviction for conspiracy to commit health care fraud tends to prove that Schrager was duped by Nachamie into participating in the charged conspiracy. According to this theory, Nachamie's health care fraud experience supports Schrager's defense that he lacked knowledge of the illegal nature of the conspiracy. The cases cited by Schrager to demonstrate the relevance of Nachamie's prior conviction, however, all involved situations in which the relationship between the other act evidence and the charged crimes were much closer in time and in character than that presented here. *See Aboumoussallem*, 726 F.2d at 911–12 (evidence that third party had duped someone else to import narcotics as part of the same plan); *see also Blum*, 62 F.3d at 67–69 (evidence that government witness had independent motive to falsify logbook, where prosecution's theory was that defendant had directed witness to do it); *United States v. Luffred*, 911 F.2d 1011, 1015 (5th Cir.1990) (district court should have ordered issuance of Rule 17 subpoenas to enable defendant to present witnesses who would have testified about third party's "modus operandi of seeking out and defrauding vulnerable women"); *United States v. Cohen*, 888 F.2d 770, 776–77 (11th Cir.1989) (evidence that government's primary witness "had the opportunity and ability to concoct and conduct the fraudulent scheme without the aid or participation" of the defendants).

Nonetheless, the Court is hard pressed to say that Nachamie's prior conviction for conspiracy to commit health care fraud has no relevance to the question of whether Schrager was duped into joining the conspiracy. Nachamie's prior conviction for health care fraud does tend to prove that

he successfully recruited doctors to participate in a similar scheme. In reaching this conclusion, the Court is relying on two crucial factors: the lack of prejudice to Nachamie and the Second Circuit's statement in *Aboumoussallem* that the only issue arising when a defendant offers evidence pursuant to Rule 404(b) "is whether the evidence is relevant to the existence of some fact pertinent to the defense." *Aboumoussallem*, 726 F.2d at 912. As a result, Nachamie's prior conviction for conspiracy to commit health care fraud would be admissible under Rule 404(b) at a separate trial.

**2. Rule 806**

■ Defendant Vining argues that Rule 806 provides an alternative basis under which Nachamie's prior conviction would be admissible at a separate trial. According to this theory, if the Government introduces any statements by Nachamie, those statements would not be hearsay because they would fall under Rule 801(d)(2)(E), which defines as not hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). Vining argues that Nachamie's statement then can be impeached with his prior conviction under Rule 806, which states in relevant part:

> When a hearsay statement, or a statement defined in Rule 806(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

Fed.R.Evid. 806.

The Government argues that Rule 806 limits its application to evidence that would be admissible if the declarant had testified. According to the Government, Nachamie's prior conviction would not be admissible under Rule 609(b), which states in relevant part:

> Evidence of a conviction under this rule is not admissible if a period of more

than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Fed.R.Evid. 609(b). At a separate trial, however, Nachamie's prior conviction would have no prejudicial effect and, because it is a fraud conviction, would provide probative evidence of his credibility.[6] As a result, if the Government offered any statements by Nachamie at a separate trial, Nachamie's conviction for conspiracy to commit health care fraud would be admissible to impeach his credibility, because its probative value would substantially outweigh its prejudicial effect.

**B. Would the Doctors be Prejudiced by a Joint Trial?**

■ Although Nachamie's prior conviction for conspiracy to commit health care fraud would be admissible at a separate trial, the inquiry does not end there. In *Zafiro*, the Supreme Court emphasized:

There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Zafiro*, 506 U.S. at 537, 113 S.Ct. 933 (quotation marks and citations omitted); *see also United States v. Amato*, 15 F.3d 230, 237 (2d Cir.1994) ("Given the balance struck by Rule 8, which authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice.") (quotation marks and citations omitted). In *Zafiro*, the Supreme Court

suggested that "a defendant might suffer prejudice [sufficient to justify severance] if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

Evidence that Nachamie was convicted of conspiracy to commit health care fraud more than twenty years ago is not "essential exculpatory evidence" sufficient to justify a severance. In *Zafiro*, the Supreme Court offered the example of the exculpatory testimony of a co-defendant. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933 (citing *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir.1979)). In *Tifford*, the co-defendant would have offered "specific exculpatory testimony . . . available only if the motion to sever were granted." *Tifford*, 588 F.2d at 957. Courts interpreting *Zafiro* have read the "essential exculpatory evidence" requirement narrowly. *Compare United States v. Jobe*, 101 F.3d 1046, 1059–60 (5th Cir.1996) (denial of severance proper where co-defendant's testimony was presented in a "conclusory, non-incriminating affidavit") *with United States v. Neal*, 27 F.3d 1035, 1047 (5th Cir.1994) (denial of severance improper as to two defendants where "undisputed leader of the conspiracy" would have testified that those defendants did not participate in conspiracy); *see also United States v. Smith*, 34 F.3d 514, 522 (7th Cir.1994) (denial of severance proper where defendant sought to admit telephone records, because the absence of those records from the joint trial "in no way prevented the jury from making a reliable judgment about guilt or innocence") (quoting *Zafiro*). Although Nachamie's prior conviction is admissible under Rule 404(b), its probative value is fairly low. *See Aboumoussallem*, 726 F.2d at 912 ("[E]vidence that several months earlier Nazih duped a stranger did not have much probative force to show that he duped [the defendant.]"). Either as Rule 404(b) evidence or as Rule 806

---

**6.** This rationale would not apply to Nachamie's conviction for attempted arson, because it is not a crime involving dishonesty or false statement.

evidence used to impeach Nachamie's credibility, Nachamie's prior conviction is not sufficiently exculpatory to justify severance.

In addition, the doctors would not suffer prejudice at a joint trial because Nachamie's conviction is cumulative of evidence that will be presented at that trial. *See United States v. Wilson*, 11 F.3d 346, 354 (2d Cir.1993) (one factor in deciding whether to grant a severance motion based on the need to call a co-defendant is "the degree to which the exculpatory testimony will be cumulative") (quotation marks and citation omitted). The Government has made clear that, at a joint trial, it would introduce a significant amount of evidence that Nachamie was neither trustworthy nor credible. This evidence would both support Schrager's defense theory that he had been duped and impeach Nachamie's credibility. Indeed, as detailed above, the volume of other evidence at the Government's disposal led this Court to preclude the Government from introducing Nachamie's prior conviction against him. *See* pp. 144–45 *supra.* Accordingly, the doctors are not entitled to a severance based on their inability to introduce Nachamie's prior conviction at a joint trial.

## IV. SEVERANCE DUE TO UNAVAILABILITY OF TUNICK'S COUNSEL

Although the doctor defendants are not entitled to a severance of their trial based on their evidentiary argument, they are the beneficiaries of an unexpected problem. On March 10, 2000, while this opinion was being drafted, the Court received a letter from Diarmuid White, counsel for Edwin Tunick, which stated:

This is to update the Court on the status of the New York state securities fraud case which I am currently trying. The five-defendant trial commenced on February 14, 2000, and today concluded its fourth week. The prosecutors advised me today that the case has been moving slowly and that their direct case would take another four weeks, although the trial had previously been projected to last five or six weeks in total. I call this to the Court's attention because it is now apparent that the March 29, 2000, trial date of [this] federal case will overlap with the state trial, placing me in an untenable position.

March 10, 2000 Letter from Diarmuid White, Esq., counsel for Edwin Tunick. Waiting for the state trial to end would delay the start of this trial until April 26, 2000, at the earliest.

In an effort to resolve this problem, the Court held a conference with all counsel on March 13, 2000. One suggestion was that the trial be adjourned to April 26, 2000 with a projected end date of June 16, 2000. Despite the Court's efforts, this suggestion proved impossible. Counsel for Jose Hernandez and Lydia Martinez, two of the non-doctor defendants, are scheduled to begin a multi-defendant trial before The Honorable Raymond Dearie of the United States District Court for the Eastern District of New York on June 5, 2000. The Court contacted Judge Dearie about moving that trial to June 19, 2000 or later, in order to accommodate the rescheduling of this trial. After exploring that possibility, Judge Dearie informed the Court that his trial could not be delayed, because defense counsel in that case had a commitment in another multi-defendant trial.

The other suggestion was that this trial be adjourned to June 19, 2000—after Judge Dearie's trial—in order to accommodate counsel for Hernandez and Martinez. This suggestion would provide a projected end date of August 11, 2000. Due to Speedy Trial Act concerns, as well as previous commitments, neither the Court nor all counsel could commit to that schedule.

A court has the inherent power to sever trials in the interest of efficient judicial administration. *See United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir.1989) ("[D]istrict judges must retain a considerable degree of discretion in determining

whether, on balance, the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants."); *see also United States v. McManus,* 23 F.3d 878, 882–83 (4th Cir. 1994) ("Although the rule is silent as to the trial court's authority to grant a severance sua sponte, this power has been recognized."); *United States v. De Diego,* 511 F.2d 818, 824 (D.C.Cir.1975) ("[T]he court had the power, in the interest of justice, to grant a Rule 14 severance sua sponte."). Indeed, the Second Circuit has described the district court's discretion whether to sever trials as "virtually unreviewable." *Amato,* 15 F.3d at 237 (quotation marks and citation omitted).

> As Judge Glasser so eloquently stated: Trial judges ... face a great problem of trial management in prolonged cases. Juggling various attorneys' schedules with the other cases before the court becomes impossible. 'The already overburdened docket of the court reaches a breaking point, and the administration of justice in *all* of the court's cases is unconscionably delayed.... Where the judge decides to sever the trial, the court is left with much greater flexibility to administer both that and other cases ... and some normalcy remains as to the rest of the court's docket.' Severance will help obviate many of these difficulties.

*United States v. Upton,* 856 F.Supp. 727, 737 (E.D.N.Y.1994) (citation omitted). This Court has reserved eight weeks of trial time on its calendar—from March 29, 2000 through May 19, 2000—since November 29, 1999. Counsel for Edwin Tunick is not available to try this case on March 29 and cannot be replaced at this late date. The Court has explored alternatives to severing this trial, but none are feasible. As a result, the Court has no choice but to sever this trial.

The question then becomes: Who should be severed? The easiest answer (and the one suggested by the Government) is Tunick, but the easiest answer is often not the wisest one. Other than the fact that his counsel is unavailable on March 29, there is no good reason to sever Tunick. On the other hand, the defendants in this case can be grouped into two broad categories—the doctors (Schrager, Vining, and Kalani) and the non-doctors (Nachamie, Barton, Hernandez, and Martinez). As demonstrated above, the doctors will be able to introduce evidence at a separate trial that they would not be able to introduce at a joint trial. *See* pp. 147–50 *supra.* In addition, the doctors and the non-doctors have mutually antagonistic defenses. Essentially, the doctors will contend that they were duped by Nachamie and the other non-doctors, while the non-doctors will argue that they were unaware of the fraud being perpetrated by the doctors. *See* Mar. 7 Tr., at 25–26, 72–74. Finally, one of the objects of the charged conspiracy, as well as several of its means and methods and many of its overt acts, only relate to non-doctors. *See* Third Superseding Indictment, ¶¶ 14, 15(a), 15(b), 15(f), 15(i), 16(a)-(*l*), 16(ff).

Although neither the evidentiary issue nor the mutually antagonistic defenses would be sufficient on their own to justify severance of the doctors, they are factors to consider once the Court has determined that a severance is necessary. *See Upton,* 856 F.Supp. at 736 ("Even if the risk of prejudice ... does not rise to the level where severance would be *required,* another factor—the efficient administration of justice—tips the balance in favor of severance."). As a result, the trial of the doctors will be severed from the trial of the non-doctors. The doctors will be tried first, with jury selection starting on March 27, 2000.[7]

## V. MOTION TO SEVER ALLEGATIONS RELATING TO THE FEDERAL ANTI–KICKBACK STATUTE, 42 U.S.C. § 1320a–7b(b)(1)(A)

Defendants Tunick and Hernandez move to sever the allegations added to the Third

---

7. The trial of the non-doctors will begin on June 19, 2000.

Superseding Indictment involving purported kickbacks from a medical laboratory in Florida. Tunick argues that these allegations, which were not included in any prior indictment, constitute a separate conspiracy from the conspiracy charged in Count One and therefore should not be joined under Fed.R.Crim.P. 8. In addition, Tunick contends that, even if the kickback allegations are properly joined under Rule 8, they should be severed, pursuant to Fed. R.Crim.P. 14, because the defendants are prejudiced by the addition of the allegations less than two months before trial. Hernandez echoes Tunick's prejudice argument.

### A. Are the Allegations Properly Joined?

■ The Second Circuit has adopted general guidelines for deciding whether allegations in a conspiracy charge are improperly joined under Rule 8 because they constitute a separate conspiracy:

> An indictment is duplicitous if it joins two or more distinct crimes in a single count.... A conspiracy indictment presents unique issues in the duplicity analysis because a single agreement may encompass multiple illegal objects. In this Circuit, it is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects.... Whether the government has proved a single conspiracy or has instead proved multiple other independent conspiracies is a question of fact for a properly instructed jury.

*United States v. Aracri,* 968 F.2d 1512, 1518–19 (2d Cir.1992) (quotation marks and citations omitted). Applying this principle, courts in this district have denied pre-trial motions to dismiss conspiracy counts as duplicitous. *See United States v. Fernandez,* No. 97 CR 233(LMM), 1999 WL 1038049, at *1 (S.D.N.Y. Nov. 16, 1999) (McKenna, J.) ("Whether the evidence will prove the single conspiracy charged, or multiple conspiracies, cannot be determined on the face of the indictment since it is a factual issue for the jury."); *United States v. Szur,* No. S5 97 Cr. 108(JGK), 1998 WL 132942, at *11 (S.D.N.Y. Mar. 20, 1998) (Koeltl, J.) ("[S]ince the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single or multiple conspiracies exist is a question for the jury and is not a basis to dismiss the conspiracy count."); *United States v. Gabriel,* 920 F.Supp. 498, 505 (S.D.N.Y.1996) (Rakoff, J.) ("Given Count Six's boilerplate allegations of a single conspiracy, the Court cannot conclude on the basis of the pleadings alone that there is no set of facts falling within the scope of Count Six that could warrant a reasonable jury in finding a single conspiracy."), *aff'd,* 125 F.3d 89 (2d Cir.1997); *United States v. Conesa,* 899 F.Supp. 172, 174 (S.D.N.Y.1995) (Batts, J.) ("The Government's indictment charges, and the Government maintains that the evidence will prove, a single conspiracy.").

Tunick cites several cases in which courts required a pre-trial proffer from the Government in order to justify the joinder of certain counts or certain defendants. *See United States v. Camacho,* No. S12 94 Cr. 313(CSH), 1996 WL 137318, at *2 (S.D.N.Y. Mar. 26, 1996) (directing government to submit affidavit explaining how additional counts in an indictment satisfied Rule 8); *United States v. Castellano,* 610 F.Supp. 1359, 1397 (S.D.N.Y.1985) ("No authority appears to exist ... that prohibits pretrial scrutiny of the sufficiency of the government's theory [of joinder.]"). Although none of these cases involved the question of whether the Government had improperly charged multiple conspiracies as a single conspiracy, Tunick sensibly argues that at some point a court could conclude, as a matter of law, that the allegations in a single conspiracy count improperly charge multiple conspiracies. For example, if the Government had included the distribution and sale of cocaine

as an object of a conspiracy to commit Medicare fraud, a court might find, at the pretrial stage, that there was "no set of facts . . . that could warrant a reasonable jury in finding a single conspiracy." *Gabriel,* 920 F.Supp. at 505. On any question of fact, a court can decide that there is no set of facts on which a reasonable jury could rule in favor of a given party:

> [W]henever a court is called upon to evaluate the sufficiency of a party's evidence on an issue for which that party bears the burden of proof—whether before verdict or after—the standard is the same. Whether the issue is broached on a motion for summary judgment (before trial), on a motion for judgment as a matter of law (at trial but prior to submission to the fact finder), on a motion for a judgment as a matter of law after a jury verdict, or on appeal after trial, the question is always whether, after drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor.

*McCarthy v. New York City Technical College,* 202 F.3d 161, 166–67 (2d Cir.2000) (quotation marks and citations omitted). In order to properly exercise its "virtually unreviewable" discretion regarding whether joinder is proper, a court must have the power to inquire into the Government's theory of joinder. *See Amato,* 15 F.3d at 237 ("A motion for severance under Rule 14 is addressed to the discretion of the trial court, . . . and the sound exercise of that discretion is virtually unreviewable.") (quotation marks and citation omitted).

In written submissions and at oral argument, the Government has explained its theory for joining the kickback allegations as an object of the conspiracy charged in Count One. *See* March 1, 2000 Letter from Robert R. Strang, Assistant United States Attorney ("Gov. Kickback Letter"); March 6, 2000 Letter from Diarmuid White, counsel for Edwin Tunick; Mar. 7 Tr., at 31–45. After considering this material, I conclude that the Government has set forth a set of facts from which a reasonable jury could conclude that Count One states a single conspiracy. The Government alleges that the defendants ordered laboratory procedures in exchange for payments, or kickbacks, from the laboratory. In addition, the Government alleges that the defendants ordered these procedures without regard to whether they were medically necessary. "The 'single continuing scheme,' as charged in Count One of the Indictment, arises from the conspirators' concerted attempts to fraudulently order and arrange various medical procedures and to fraudulently bill for them under the Medicare program." Gov. Kickback Letter, at 3. If the Government proves the underlying facts beyond a reasonable doubt—i.e., that the laboratory procedures were ordered without any assessment of their medical necessity—a reasonable jury could find that the defendants agreed to order unnecessary procedures, thereby defrauding Medicare, in order to receive kickback payments from the laboratory, thereby violating 42 U.S.C. § 1320a–7b(b)(1)(A).

Tunick correctly points out that, under 42 U.S.C. § 1320a–7b(b)(1)(A), it does not matter whether the tests were medically necessary; a person violates that statute even if he receives a kickback payment for a medically necessary procedure.[8] *See United States v. Starks,* 157 F.3d 833, 838 (11th Cir.1998) ("Section 1320a–7b is not a highly technical tax or financial regulation that poses a danger of ensnaring persons

---

**8.** 42 U.S.C. § 1320a–7b(b)(1)(A) states in relevant part:

> [W]hoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony.

engaged in apparently innocent conduct. Indeed, the giving or taking of kickbacks for medical referrals is hardly the sort of activity a person might expect to be legal.... [S]uch kickbacks are more clearly malum in se, rather than malum prohibitum."). Thus, Tunick is concerned that the jury could convict him of the conspiracy charged in Count One, even if it finds that he did not knowingly participate in a conspiracy to defraud the Medicare program, so long as it finds that he knowingly participated in a scheme to obtain kickbacks from a medical laboratory.

More than fifty years ago, however, the Supreme Court stated that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects.'" *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (quoting *Frohwerk v. United States*, 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561 (1919)); *see also Aracri*, 968 F.2d at 1518 (quoting *Braverman* ); *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980) ("[A] single agreement may encompass multiple illegal objects."). Reflecting this principle, the Indictment charges that the defendants "unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 1035, 1341 and 1347 of Title 18, United States Code and Sections 1320a–7b(a)(2), 1320a–7b(a)(5) and 1320a–7b(b)(1)(A) of Title 42, United States Code." Third Superseding Indictment, ¶ 8. Thus, Tunick is correct when he argues that there is a set of facts under which the jury could convict him of the conspiracy alleged in Count One, even if he only solicited kickbacks from a medical laboratory for legitimate medical tests.

If Tunick's fear is realized, however, the jury may well conclude that the conspiracy to solicit kickbacks for legitimate medical procedures was not part of the single conspiracy charged in Count One.[9] At this stage of the proceedings, having examined the Government's theory of joinder and a summary of the evidence supporting it, I conclude that a reasonable jury could find that all of the objects alleged in Count One of the Indictment were part of a single conspiracy. Thus, the kickback allegations were properly joined under Rule 8.

### B. Is the Joinder Prejudicial?

 Although the kickback allegations are properly joined under Rule 8(b), the Court still must consider whether that joinder is prejudicial under Rule 14. The Supreme Court summarized the principles that should govern a district court's exercise of its discretion on this issue:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.... The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, [481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987),] less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

*Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Although *Zafiro* spoke of joinder of defendants, not counts, courts have applied the *Zafiro* standard to the joinder of counts.

9. Indeed, this possibility is heightened by the Government's continued reference to the charged conspiracy as a "conspiracy to defraud the Medicare program." Gov. Kick-

back Letter, at 3; *see also* Mar. 7 Tr., at 34 ("The scheme to defraud Medicare is [sic] charged in this case is rooted in ordering of various medical procedures.").

*See United States v. Reale,* No. S4 96 Cr. 1069(DAB), 1997 WL 580778, at \*10–\*13 (S.D.N.Y. Sep. 17, 1997); *United States v. De Yian,* No. 94 Cr. 719(DLC), 1995 WL 368445, at \*11–\*13 (S.D.N.Y. June 21, 1995); *see also United States v. Yefsky,* 994 F.2d 885, 895–97 (1st Cir.1993); *United States v. Volpe,* 42 F.Supp.2d 204, 209–13 (E.D.N.Y.1999). In addition, the *Zafiro* Court was interpreting Rule 14 in light of a Rule 8(b) joinder; the Second Circuit has held that motions to sever counts, in cases involving multiple defendants, should be decided under Rule 8(b), not Rule 8(a). *See United States v. Turoff,* 853 F.2d 1037, 1043 (2d Cir.1988) ("[M]ultiple defendants may be charged with and tried for multiple offenses only if the offenses are related pursuant to the test set forth in Rule 8(b).").

*First,* both Hernandez and Tunick argue that the joinder of the kickback allegations is prejudicial because those allegations were added to the indictment seven weeks before trial—and fifteen months after the original indictment. The Second Circuit has stated that the Government cannot supersede an indictment "in bad faith or with a dilatory motive." *United States v. Kelly,* 45 F.3d 45, 48 (2d Cir.1995). In order to get a better sense of the Government's reason for superseding the indictment so soon before trial, the Court directed the Government to submit a written response to the following question:

> Why did the Government first add the allegations regarding the federal anti-kickback statute, 42 U.S.C. § 1320a–7b(b)(1)(A), in the Third Superseding Indictment, which was returned on February 8, 2000, seven weeks before trial and fifteen months after the original Indictment?

Mar. 9 Order, at 1. On March 12, 2000, the Government responded as follows:

> In November 1999, this Office became aware that an individual whose picture appeared in a surveillance photograph in the company of Alan Barton Nachamie, Jose Hernandez, and others, was independently in the process of seeking to cooperate with the United States Attorney's Office in the Southern District of Florida. This Office made arrangements to meet with this individual on December 1, 1999, and at that time this individual provided direct evidence that Alan Barton Nachamie, Edwin Tunick, Lydia Martinez, and Jose Hernandez conspired to solicit kickback payments by using the same patients that they used in the overall scheme to defraud Medicare for medically unnecessary services.

> In order for the Government to be able to make use of this testimony, it was necessary for the United States Attorney's Office in the Southern District of Florida to enter into a cooperation agreement with this individual. Following a hospitalization of this individual's son and the calculation of the loss figure in his cooperation agreement in the Southern District of Florida, this individual signed a cooperation agreement on February 1, 2000. This Office sought, and the Grand Jury returned, Indictment S3 98 Cr. 1238(SAS) on February 8, 2000, one week after that cooperation agreement was signed.

March 12, 2000 Letter from Robert R. Strang, Esq., Assistant United States Attorney.

The Government's response satisfies the Court that this case is distinguishable from cases in which courts have prevented the government from superseding indictments for strategic reasons. *See United States v. Jones,* 16 F.3d 487, 492 (2d Cir.1994) (district court abused discretion in not severing felon-in-possession count where count was added only after first trial for bank robbery ended in hung jury, because "[t]he ineluctable conclusion is that the government added the count solely to buttress its case on the other counts"); *United States v. Camacho,* 939 F.Supp. 203, 210 (S.D.N.Y.1996) (dismissing new charges where the government added charges after the defendants refused to plead guilty, be-

cause "[s]uperseding an indictment shortly before trial, to add essentially unrelated charges to those the defendants have refused to plead to, may reasonably be regarded as bad faith."). Despite the Government's credible explanation, however, the fact remains that the Government added a new object of the alleged conspiracy—one that requires a completely new theory of defense—less than two months before the original trial date. The timing of the superseding indictment inevitably prejudices the non-doctor defendants, the only defendants against whom that object is charged. Given the decision to sever this case, however, I conclude that any prejudice to the non-doctor defendants caused by the addition of the kickback allegations will be cured by the four-month interval between the Third Superseding Indictment and the new start date of their trial. *See Zafiro,* 506 U.S. at 538–39, 113 S.Ct. 933 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

*Second,* Tunick argues that the kickback allegations, which will constitute only a small portion of the Government's proof, will overwhelm the Medicare fraud charges, which will constitute the bulk of the Government's proof. *See* Mar. 7 Tr., at 53–56 (kickback allegations involved approximately 100 tests and a single laboratory, with testimony from two witnesses). Essentially, Tunick contends that the joinder of the kickback allegations will "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. While Tunick's argument has some appeal, this case does not present the level of prejudicial spillover required to find that the jury will be prevented from making a reliable judgment about guilt or innocence. *See Jones,* 16 F.3d at 492–93 (severing felon-in-possession count where its only possible purpose was to enable jury to learn that defendant had a felony record); *United States v. Cardascia,* 951 F.2d 474, 483 (2d Cir.1991) ("Relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater."). In addition, this is exactly the type of case where limiting instructions should cure any potential prejudice. *See Zafiro,* 506 U.S. at 539, 113 S.Ct. 933 ("[L]ess drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice.").

Accordingly, the motion to sever the kickback allegations from the Third Superseding Indictment is denied. In addition, Hernandez's motion for a two-week adjournment is granted, albeit on a different ground.

## VI. CONCLUSION

For the foregoing reasons, defendant Nachamie's motion in limine to preclude the Government from introducing evidence of his prior convictions at his trial is hereby GRANTED, the motion by defendants Tunick and Hernandez to sever the kickback allegations is hereby DENIED, and the trial of defendants Schrager, Vining, and Kalani is hereby SEVERED from the trial of defendants Nachamie, Tunick, Hernandez, and Martinez.

Jury selection in the trial of defendants Schrager, Vining, and Kalani will begin on March 27, 2000. The defendants' proposed jury questionnaire is due on March 17, 2000; the Government's proposed jury questionnaire is due on March 21, 2000.